Sandra S. SMITH, Plaintiff–Appellant,

v.

Ted W. SUSHKA, Defendant–Appellee.

No. 95–4261.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 8, 1996.

Decided July 2, 1997.

Mark S. Coco, argued and briefed, Harris, McClellan, Binau & Cox, Columbus, OH, for Plaintiff–Appellant.

Randall Lee Lambert, argued and briefed, Ironton, OH, for Defendant–Appellee.

Before: LIVELY, BOGGS, and NORRIS, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which NORRIS, J., joined. LIVELY, J. (pp. 971–974), delivered a separate dissenting opinion.

## OPINION

BOGGS, Circuit Judge.

Plaintiff Sandra S. Smith appeals from a magistrate judge's [1] grant of summary judgment to defendant Ted W. Sushka in this dispute over an allegedly political firing. Smith filed suit under 42 U.S.C. §§ 1983 and 1985, alleging that she had been terminated as administrative assistant to the Washington County, Ohio engineer, in violation of her First and Fourteenth Amendment rights. The magistrate judge, in reaching his decision in favor of Sushka, held that Smith was collaterally estopped from relitigating the issue of her job duties as administrative assistant and that, based on the facts found by the Ohio State Personnel Board of Review ("SPBR"), her position "was one for which party affiliation is an appropriate requirement for the effective performance of the office." We affirm.

### I

In November 1981, Smith began working as an administrative assistant to the Washington County engineer, who at that time was Paul Junk. Sushka, however, defeated Junk in the 1992 Democratic primary and ultimately prevailed in the general election. In March 1993, after two months in office, Sushka fired Smith. On May 28, 1993, Smith filed a two-count complaint in federal court, alleging termination without due process of law and on the basis of her political affiliation. In this suit, Smith sought reinstatement, a permanent injunction, compensatory and punitive damages, and attorney's fees.

While the suit was pending, Smith brought an action before the SPBR, contesting her dismissal. The parties agreed to stay discovery in the federal suit pending a decision by the SPBR concerning the status of Smith's

1. The parties agreed to plenary magistrate judge jurisdiction, pursuant to 28 U.S.C. § 636(c).

former job. The SPBR ruled that Smith was an unclassified employee, as defined by Ohio Rev.Code § 124.11(A)(9),[2] and dismissed her action for lack of jurisdiction.[3] The Administrative Law Judge issued a 28–page opinion, finding the following facts:

I find that, during the pertinent approximate one year period prior to her removal, Appellant served as the Administrative Assistant to the Washington County Engineer. I further find that, during that period, a large portion of Appellant's work was divided into two general areas, fiscal and administrative.

In regard to the fiscal area, ... appellant kept the accounts for the WCE, was privy to all information concerning the fiscal aspects of the WCE and was more knowledgeable concerning those accounts than any other Washington County employee.... I also find that on a continuing basis, Appellant advised WCE Junk concerning the availability of funds, transfers, budget allocations and projections, et cetera. Among her other duties ... were to provide explanations or embellishments along a spreadsheet column providing the WCE with vital information concerning his decision making regarding budgetary allocations for the entire Office of the Engineer.

Further ... Appellant was authorized to and on occasion did certify the entire payroll and each separate line item therein as accurate using her signature. Further, ... there were a number of times when that payroll, which was initially prepared by Appellant, or by the Account Clerk under [her] supervision ... would not again cross Mr. Junk's desk once it had been approved. As well, ... Appellant

had the authority to open accounts on behalf of the WCE.

I find that, while carrying out these responsibilities and other fiscal and administrative responsibilities, Appellant had significant interaction with the Washington County Commissioners, themselves, with the Washington County Commissioners' Prevailing Wage Coordinator, and with the Washington County Auditor or the Auditor's Bookkeeper.... Appellant accompanied the Engineer to meetings with the Washington County Commissioners and provided him with data and provided responses to questions concerning the WCE's budget. Further, ... there would have been times when the Commissioners would have gone directly to Appellant with questions concerning the budget.

Additionally, ... Appellant interacted with both township trustees and with the township Board's clerks during this period. That interaction included answering telephone inquiries or face-to-face inquiries from trustees or their respective clerks regarding various activities of the WCE's office and assisting the trustees to process funds or order various items including piping and road signs. I also find that Appellant set up the procedure to and assisted in collecting payments for Frost Law exemptions, which funds were later distributed to the township trustees.

Further, ... during this period, Appellant had the authority to and did approve various requests for leave for various employees within the office ... and had the authority to deny that leave.... Additionally, ... Appellant had the authority to and did approve expenditure requests and purchases of under one hundred fifty dol-

---

**2.** That provision states in pertinent part:

(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

. . . . .

(9) The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relations to such principals and those persons employed by and directly responsible to elected county officials and

holding a fiduciary or administrative relationship to such elected county officials, and the employees of such county officials whose fitness would be impracticable to determine by competitive examination....

Ohio Rev.Code § 124.11(A)(9) (Banks–Baldwin 1994).

**3.** Since the Board lacks jurisdiction over an appeal by an employee in an unclassified position, the determination of whether Smith was a classified employee was logically prior to any consideration of the merits of her claim. *See* Ohio Rev.Code § 124.03.

lars for various employees of the WCE. Also, ... under extraordinary circumstances, Appellant ... had the authority to approve purchase of greater than one hundred fifty dollars. Additionally, ... in late December, 1992, Mr. Junk designated Appellant as the employee in charge of the WCE's office staff....

... [I]n late December, 1988, Appellant, ... had an oath of office administered to her by the Honorable Robert Rawson.... [The oath] was administered ... [because] Mr. Junk ... wished to publically recognize her.

... [A]s well as performing functional supervision over the administrative office staff, Appellant performed direct supervision over Raelene Malster, the Account Clerk....

... Appellant's administrative functions included interacting with workers' compensation and unemployment compensation processors and in assisting WCE employees in their relationships with those processors....

I also find that Appellant performed various other miscellaneous functions.... Appellant also performed duties including answering general telephone calls or inquiries and dealing with the public either over the telephone or in person.... I further find that Appellant prepared various contracts for the WCE, usually by amending previous contracts submitted to vendors.

Finally, ... Appellant answered directly to Mr. Junk during his tenure and later to Mr. Sushka during the remainder of Appellant's tenure with the WCE....

Report and Recommendation of the SPBR at 22–24, No. 93–REM–03–0182 (Feb. 7, 1994). Smith appealed the decision, and the parties agreed that, except for a ruling on Sushka's motion for summary judgment on the politi-

cal affiliation claim, the federal court case would be held in abeyance pending the SPBR's decision on appeal. The SPBR's decision was affirmed by the Washington County Court of Common Pleas and the Ohio Court of Appeals. As a result, Smith voluntarily dismissed her due process claim against Sushka in federal court.[4] This left only the political affiliation claim remaining.

After the court of appeals upheld the SPBR's decision and three days before the political affiliation claim was to go to trial in federal court, Sushka filed a second motion for summary judgment, raising collateral estoppel for the first time.[5] In this motion, he admitted firing Smith for political reasons but argued that political affiliation was an appropriate requirement for the effective performance of Smith's position. Relying on the SPBR's decision, he argued that Smith was collaterally estopped from litigating the factual issue of her duties as administrative assistant under Junk and that these factual findings showed that political affiliation was an appropriate requirement for that position. The magistrate judge delayed the trial to give Smith time to respond to the motion. After briefing and argument, the magistrate judge granted Sushka's motion and dismissed the action.

In his opinion, the magistrate judge held that Smith was collaterally estopped from relitigating the factual issue of what duties she had performed as administrative assistant under Junk. He found that Smith had had a fair opportunity to litigate this issue, and in fact, had litigated the issue fully before the SPBR and the Ohio courts. Based on the facts as found by the SPBR, the magistrate judge concluded that "plaintiff's position was one for which party affiliation is an appropriate requirement for the effective performance of the office." Smith timely appealed this decision.

---

4. Smith dropped this claim because, after the court of appeal's decision, it became apparent that her due process claim was untenable because unclassified state employees serve at the discretion of the appointing authority and may be removed at his pleasure. Ohio Admin. Code 124–1–01.

5. Sushka had previously filed a motion for summary judgment on the political association claim,

arguing that Smith had failed to meet her burden of showing that political association was a substantial or motivating factor in her termination. The district court denied this motion, finding that the evidence was sufficient to raise a genuine issue of material fact as to whether Smith's political affiliation with Junk was a factor in her termination.

On appeal, Smith makes two arguments. First, she argues that the issues of collateral estoppel and political affiliation as an appropriate job requirement were waived by Sushka because he never pled or properly relied on them prior to his second motion for summary judgment. Second, she argues that the district court improperly applied collateral estoppel to her case.

## II

▇ Plaintiff begins her attack on the judgment by raising a technical point of pleading, arguing that Sushka has waived his right to raise either the affirmative defense of collateral estoppel or political affiliation as an appropriate job requirement. Although Sushka did not raise either defense before the second motion for summary judgment, we do not believe this is fatal. Failure to raise an affirmative defense by responsive pleading does not always result in waiver. *See Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir.1993). The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond. *Ibid.* While we agree that Sushka should have been more diligent in raising these defenses, we do not believe that the district court abused its discretion by permitting them to be raised in the second motion for summary judgment. Sushka's failure to raise either affirmative defense did not result in surprise or unfair prejudice to Smith, especially since the district court extended the trial date in order to give Smith the opportunity to fully respond to and brief the issues. Additionally, both parties understood that the decision by the SPBR could determine some of the issues in this case. In fact, the SPBR decision led Smith to drop her due process claim altogether. Moreover, by admitting that he discharged Smith for political reasons, Sushka narrowed the remaining issues in the case. Thus, Smith needed only prove that her job was protected by the First Amendment, lessening her burden.

## III

The next assignment of error is more difficult to answer. Nevertheless, we believe that the doctrine of collateral estoppel as it applies in Ohio bars Smith from litigating her job duties in federal court and that these job duties, as found by the SPBR, show that political affiliation is an appropriate requirement for the position of administrative assistant to the Washington County engineer.

▇ Collateral estoppel, also called claim preclusion, prevents a party from relitigating issues of fact or law which were necessarily decided by a previous final judgment. As a federal court, we are required to apply the doctrine of collateral estoppel in the same manner as the state courts in the state in which the earlier judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

▇ In Ohio, collateral estoppel bars relitigation of those claims on which a final judgment on the merits has been entered, so long as there has been a "fair opportunity to fully litigate" the claim. *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 985 (1983). "[T]he party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment of the prior action." *Ibid.* (citations omitted). Thus, collateral estoppel bars relitigation only when the identical issue was actually decided in the prior case. *Id.* 443 N.E.2d at 987. This requirement, however, is not so narrow as to require the courts to have framed their conclusion in the exact same manner.

> [Rather,] the Ohio Supreme Court [has] stated that the test to be used in determining the identity of issues involves a consideration of the evidence presented in support of each: If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other . . . .

*Monahan v. Eagle Picher Indus.*, 21 Ohio App.3d 179, 486 N.E.2d 1165, 1168 (1984) (quoting *Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67 (1943) (internal quotations omitted)). "It is [thus] the differences in the focus of evidence and proof that determine the dissimilarity of issues and requires that a judgment in one action not be a bar to the maintenance of the other." *Id.* 486 N.E.2d at 1169.

■ Necessary to the state court decision in this case was the determination of whether Smith had, in the language of the Ohio statute, a "fiduciary or administrative relationship" to the Washington County engineer. We hold, upon de novo review, that this issue is identical, for purposes of collateral estoppel, to the issue of whether political affiliation is an appropriate consideration in staffing Smith's position. While the ultimate conclusions are framed differently, the "same facts or evidence ... sustain both." *Id.* at 1168.

The Supreme Court trilogy of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); and *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), establishes the boundaries for determining when political affiliation is an appropriate consideration for staffing a position. In *Branti,* a majority of the Court reaffirmed the holdings of the *Elrod* plurality that patronage dismissal violates the First Amendment and that permitting politically motivated dismissals of persons in certain politically sensitive positions is necessary to uphold vital governmental interests. 445 U.S. at 513–16, 100 S.Ct. at 1292–94.[6] The Court in *Branti,* however, reformulated the scope of permissible patronage, holding that "the

question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295.[7]

■ Determining whether political affiliation is an appropriate basis for a personnel decision depends upon "the inherent duties of that position *and* the duties that the new holder of that position will perform. A plaintiff's failure to meet either part of this test would cause the claim to be dismissed." *Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 913 (6th Cir.1991) (emphasis in original). The two tests outlined in *Faughender,* "the job as actually performed" and "the job as envisioned," are not completely separate and independent. Rather, if one or the other test is clearly and directly applicable, the other is not independently necessary, although it may be somewhat informative. *See McCloud v. Testa,* 97 F.3d 1536, 1561 (6th Cir.1996).

And while *Faughender* states that a court must examine the position itself, not just the position as performed, an employer's prior duties can be used "as a way to gather evidence that the person's position was one affecting policy." *Faughender,* 927 F.2d at 915. We believe that the SPBR's findings of "the job as actually performed" by Smith shows the "inherent duties" of her position are political in nature. Therefore, we do not believe that this case needs to be remanded for a determination of the duties of the position as envisioned by the new county engineer, especially since the record does not indicate that Sushka intended to make the duties of the administrative assistant any different.[8]

---

**6.** Although *Branti* concerned membership in different political parties, the underlying rationale has been understood by this circuit to apply to any political difference; thus, political affiliation is not limited to membership in a political party and includes commonality of political purpose and support of political candidacy. *McCloud v. Testa,* 97 F.3d 1536, 1548 (6th Cir.1996) ("dicta and holdings in our own circuit strongly and nearly without exception support the concept of applying the ban on patronage employment practices to non-ideological factions within the same party"). Thus the fact that both the previous county engineer, Junk, and Sushka are Demo-

crats does not make the decision to terminate Smith any less political.

**7.** Prior to this, the inquiry had been whether the position was one of "policymaker" or was "confidential." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

**8.** Although Smith performed mainly clerical duties after Sushka took office, this appears to have been due to her political affiliation with Junk and not to Sushka's desire to change the duties of her position.

The evidence of Smith's job duties as performed clearly shows that her position was political, as it falls squarely within the "Category Three" positions discussed in *McCloud*.[9] As administrative assistant to the Washington County engineer, Smith was a "confidential employee[ ] who control[led] the lines of communications to [a] category one position[ ]."[10] *McCloud*, 97 F.3d at 1557. And there is nothing in the inherent nature of the position of administrative assistant to contradict her previous duties.

The state court's determination that Smith held an unclassified position because of the fiduciary nature of her position further supports a finding that the inherent nature of her position is such that political affiliation is appropriate. As noted in *McCloud*, while the *Elrod* test in *Branti* was modified from an inquiry into whether the position is "confidential" or "policymaking" in nature to an inquiry of whether political affiliation is an appropriate requirement, "for the most part" the old labels "remove First Amendment protection from the same class of jobs." *McCloud*, 97 F.3d at 1553–54. Thus, in a case where the actual duties previously assigned were political, as here, and nothing in the inherent nature of the position suggests otherwise, summary judgment is appropriate, especially where, as here, a determination that the position was one of fiduciary responsibility has already been made. Therefore, we hold that the legal issue determined by the SPBR, though framed differently, and the factual findings on which its decision was based, are identical to the issue of whether Smith's position is one "where party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295.

## IV

For the foregoing reasons, the district court's order granting Sushka's motion for summary judgment is **AFFIRMED**.

## DISSENT

LIVELY, Circuit Judge, dissenting.

In my opinion this court has not been consistent in its treatment of cases involving political firings. In fact, it seems to me that the court often goes out of its way to deny to fired public employees the benefit of the holdings by the Supreme Court in the *Elrod–Branti–Rutan* trilogy. The present case is, I believe, an example of the court's tendency to eviscerate the protection afforded public employees in these decisions by finding that "party affiliation is an appropriate requirement for the effective performance," *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), of every public job except those at the very lowest level.

## I.

The *Elrod–Branti–Rutan* trilogy establishes that public employees continue to enjoy First Amendment freedoms of political belief and associational activity save in the narrow exception where "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. The majority opinion in the present case is this court's most recent effort to allow this narrow exception to swallow the broad general rule that dismissal of government employees on the basis of political affiliation runs afoul of the First Amendment by restraining freedom of political belief and infringing upon the right to associate with others to advance those beliefs. *Elrod v.*

---

**9.** This court in *McCloud* categorized certain positions as falling into the *Branti* exception. One of those categories, "Category Three," includes:

confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors.

97 F.3d at 1557.

**10.** A "Category One" position includes "positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted." *McCloud*, 97 F.3d at 1557.

*Burns,* 427 U.S. 347, 355–60, 96 S.Ct. 2673, 2680–83, 49 L.Ed.2d 547 (1976).

In *Williams v. City of River Rouge,* 909 F.2d 151 (6th Cir.1990), this court stated: "When examining a public office for first amendment protection against politically-motivated dismissal, the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Id.* at 154. (citation omitted). The *Williams* court reasoned that consideration of the position itself "rather than the position as performed by appellant" was important because "[a]ny other approach would tend to bind a later [employer] to employ the [appellant] in the way that the official had been employed in the past." *Id.* at 155. After *Williams,* this court broadened the narrow exception, indicating that the determination of whether political affiliation is an appropriate basis for personnel decisions is dependent upon "the inherent duties of that position *and* the duties that the new holder of that position will perform." *Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 913 (6th Cir.1991) (emphasis in original).

The *Faughender* court indicated that this two-pronged test was derived from *Elrod* and *Branti,* reasoning that "a position that controls the lines of communication of a political actor must be inherently political" because political action cannot occur without communication, *id.* at 914, and that "[p]ermitting elected officials entrusted with administrative duties to reorganize their staffs according to their wishes is also derived from *Elrod* and *Branti.*" *Id.* at 915. The court later relied on *Faughender* to uphold the finding that an administrative assistant position at the Ohio Department of Transportation sought by the plaintiff was one that could be filled on a political patronage basis without violating the constitutional rights of unsuccessful candidates. *Rice v. Ohio Dep't of Transportation,* 14 F.3d 1133 (6th Cir. 1994).

In the present case, the majority finds the issue of whether Ms. Smith had a "fiduciary or administrative relationship" to the Washington County Engineer for purposes of Ohio law identical to the issue of whether political affiliation is an appropriate consideration in staffing Ms. Smith's position. I disagree. The majority's determination is based, in part, on its erroneous recitation of the two prongs of *Faughender* as: "the job as actually performed" and "the job as envisioned." Under the *Faughender* standard, and the express language of *Williams,* the appropriateness of basing a personnel decision on political considerations is not tested by the actual work performed by the plaintiff. While *Faughender* teaches that the facts relating to the position as performed may be useful in determining whether the position is one for which political affiliation is an appropriate consideration, consideration of the "job as actually performed" is different from consideration of the inherent duties, although the two may certainly overlap.

To reach its result in the present case, the majority relies heavily on *McCloud v. Testa,* 97 F.3d 1536 (6th Cir.1996), where the court stated: "There can be no doubt about the essence of the rough distinction that the Supreme Court was trying to create in the *Elrod–Branti–Rutan* trilogy of cases: "grunt" or "line" workers are entitled to First Amendment protection, but workers analogous to a cabinet secretary to a chief executive, along with the confidential advisors and administrative assistants of such executives and cabinet secretaries, are not entitled to First Amendment protection." *Id.* at 1556. (footnote and citation omitted). The *McCloud* opinion discovered four categories of employees to whom no First Amendment protection from patronage dismissal is owed.[1]

---

1. **Category One:** positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

    **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

    **Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or

Resort to category three, as the majority does in the present case, deprives public employees of First Amendment protection merely on the basis of their relationship as advisors or controllers of communications to supervisors and superiors in their chain of command. The present case illustrates the fallacy of such a categorical approach.

Reliance solely on the job as actually performed is improper in this case because it is clear from the record that Ms. Smith had a very close relationship with the former county engineer, Paul Junk, and his assistant, Dale Cottrill. It is quite possible that these two men, because of the personal confidence they had in her based on this relationship, may have given Ms. Smith assignments and responsibilities not inherent in the position of an administrative assistant. The decision of the Ohio State Personnel Board of Review (SPBR) contains voluminous factual findings concerning the actual duties performed by Ms. Smith in the one-year period immediately prior to her termination, but it contains no findings respecting the inherent nature of the position apart from the actual work performed by the plaintiff, and the SPBR did not consider the impact of Ms. Smith's personal relationship with Junk and Cottrill.

## II.

I find it particularly disturbing that the majority bases its affirmance on the conclusion that Ms. Smith was collaterally estopped from asserting her claim in district court by reason of the administrative decision of the SPBR. Collateral estoppel prevents a party from relitigating issues of fact or law which were *necessarily* decided by a previous final judgment. Federal courts are required to apply the doctrine of collateral estoppel in the same way as the state courts apply it in the state in which the earlier judgment was rendered. See *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

Under Ohio law, the doctrine of collateral estoppel bars relitigation of those claims on which a final judgment on the merits has been entered, so long as there has been a "fair opportunity to fully litigate" the claim. *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983). "[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Id.* at 201, 443 N.E.2d 978 (citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943); *First Nat'l Bank v. Berkshire Life Ins. Co.*, 176 Ohio St. 395, 199 N.E.2d 863 (1964); *Ohio Finance Co. v. McReynolds*, 27 Ohio App. 42, 160 N.E. 727 (1927)). Collateral estoppel bars relitigation only when the identical issue was actually decided in the prior case. *Id.* at 203, 443 N.E.2d 978. Determination of whether a subsequent suit is based upon the same cause of action as a prior suit requires a court to consider the facts necessary to sustain each of the claims. *Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir.1985) (applying Ohio law).

The district court granted summary judgment on the basis of the SPBR's findings concerning the work actually performed by Ms. Smith during the year immediately prior to the time the new county engineer took office. Based on the administrative record of the SPBR proceedings alone, the magistrate judge had no basis for determining that the position of administrative assistant to the county engineer is inherently political under either prong of the *Faughender* test. This would have required an inquiry beyond the factual findings of the SPBR because that body never considered the inherent nature of the position. Its only purpose was to determine whether the job, as performed by Ms. Smith, should be denominated classified or unclassified. Thus, neither the legal issue determined by the SPBR nor the factual

---

delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

**Category Four:** positions that are part of a group of positions filled by balancing out politi-

cal party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud*, 97 F.3d at 1557. (emphasis in original; footnotes omitted).

findings on which its decision was based is relevant to Ms. Smith's claim that the position from which she was fired was protected by the First Amendment from a politically motivated discharge. For this reason, collateral estoppel should not bar Ms. Smith's pursuit of her claim in this action.

The record before the SPBR does not answer the "inherent duties" prong, as discussed above, and it is totally silent with respect to the other prong of the *Faughender* test—the duties of the position as envisioned by the new county engineer, Mr. Sushka. In a letter to Ms. Smith advising her that she was being terminated, Mr. Sushka stated that the position of administrative assistant was being abolished in a reorganization of the county engineer department. In a discovery deposition before conclusion of the SPBR proceedings, the defendant testified that while an office as small as the county engineer's did not need an administrative assistant, he contemplated hiring a "confidential secretary." The position of confidential secretary would "most definitely" be different from the plaintiff's position, according to the defendant. He gave no description, however, of what the duties of the new position would be, and *Branti* teaches that the label "confidential" does not resolve the question of whether party affiliation is an appropriate requirement for the effective performance of a public office. 445 U.S. at 518, 100 S.Ct. at 1294–95.

Neither of the two essential issues of fact required to be resolved in determining whether the holder of a public job is protected from dismissal——whether the duties of the position held by the plaintiff are inherently political and whether the duties envisioned for the new holder of that position are inherently political, *Faughender*, 927 F.2d at 913——was addressed by the SPBR. Furthermore, Mr. Sushka never described to the district court the duties that he envisioned for the new holder of the substituted position. Relying as it did solely on the SPBR's findings concerning the duties performed by Ms. Smith while working under the previous county engineer, the district court made no determination of whether the position of administrative assistant was inherently politi-

cal. The record contains no written job description for the position, and it is not clear from the record whether Ms. Smith's other activities in support of the county engineer and in communication with persons outside the office were required by the job or merely entrusted to her because of her close relationship with the two top officials in the department.

### CONCLUSION

I believe Ms. Smith was short-changed. She was entitled to an opportunity to show, either in response to a motion for summary judgment or at trial, that she was entitled to First Amendment protection from a political firing. But she should not have been foreclosed by improper application of collateral estoppel. It was unfair and impermissible to shut her off on the basis of an administrative determination based on a totally different inquiry. This is just the latest example of this court's increasingly hostile attitude toward the First Amendment claims of public employees who suffer political firings.

I respectfully dissent.