**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0790n.06

**No. 14-5028**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| TARYN MURPHY and CHRIS LANDON, | ) | **FILED**<br>Oct 17, 2014<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| SERGEY LAZAREV, | ) | **COURT FOR THE MIDDLE** |
| | ) | **DISTRICT OF TENNESSEE** |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE: GIBBONS and McKEAGUE, Circuit Judges; LAWSON, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Sergey Lazarev is a Russian pop artist and entertainer. Taryn Murphy and Chris Landon are citizens of the United States and songwriters. Murphy and Landon co-authored a song, *Almost Sorry*, which they registered with the United States Copyright Office and pitched to Lazarev's manager in 2006. In order that Lazarev exploit the song, plaintiffs Murphy and Landon entered into a sub-publisher's agreement with a Moscow-based law firm, Levant & Partners, and into two licensing agreements with a Moscow-based record label, Style Records. *Almost Sorry* and its Russian-language version, *Zachem Pridumali Lyubov*, did well, but Murphy and Landon were remitted fewer royalties than they had expected. They brought suit in federal district court against Lazarev and Style for breach of contract and copyright infringement. Murphy and Landon voluntarily dismissed Style from the

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

case, and the district court granted summary judgment to Lazarev on all claims. On appeal, plaintiffs reassert their claims that Lazarev waived his affirmative defenses by failing to file an answer to their amended complaint and that Lazarev infringed their copyright to *Almost Sorry*. We affirm.

I.

On April 14, 2005, Lazarev entered into a producer's agreement with Style Records. The purpose of the agreement was to create an exclusive relationship between Lazarev and Style for the production, sale, and performances of three music albums recorded by Lazarev, as well as singles, music videos, and other objects. Pursuant to the agreement, Style obtained exclusive rights to exploit Lazarev's performances, including audio and video recordings and recordings of live performances, and to collect the proceeds from such performances during the term of the agreement. Style retained the rights to the intellectual property described in the agreement "for the whole duration of copyright and related rights as provisioned by the current law of [the] Russian Federation." In return, Style guaranteed to pay Lazarev royalties for the exploitation of his performances after recoupment of expenses.

In pertinent part, Style undertook the obligation "[t]o sign author's agreements with owners of rights, authors [whose works Lazarev would record and perform] and to conduct payments for these under this agreement of Compositions, Music Videos and Audiovisual creations." The producer's agreement also required Style to provide a production budget for specific production periods and anticipated the expense of "author's remuneration to the authors of music and lyrics of Compositions (fixed and/or royalties)." The agreement further required Style to sign a collateral agreement to retain Anna Zorina as Lazarev's manager. The original

term of the producer's agreement was to run for not more than four years from the date of execution, April 14, 2005.

Murphy and Landon co-wrote the song *Almost Sorry* in 2001 in Nashville, Tennessee. Murphy and Landon own the copyright to *Almost Sorry*, and the song is registered with the U.S. copyright office as well as Broadcast Music, Inc. (BMI) and the Russian Authors Society.

In June and November 2006, either Murphy or Murphy's mother pitched *Almost Sorry* to Zorina, who expressed interest in the song on behalf of Style and Lazarev.[1] According to Murphy, and consistent with the original producer's agreement between Style and Lazarev, Zorina was the acting manager and representative of Lazarev. Following discussions with Zorina, the plaintiffs entered into a "sub-publishing agreement" with the law firm Levant & Partners. The agreement purported to grant Levant & Partners exclusive rights to exploit *Almost Sorry*, including the rights to record, reproduce, and distribute the song in Russia and "all the countries in the world" for the period between January 1, 2007 and December 31, 2010. The agreement delimited Levant & Partners' right to exploit *Almost Sorry* to the performance of Lazarev, leaving plaintiffs the right to license the song to other artists outside of Russia and the countries of the former Soviet Union. The agreement contained no payment terms; however, plaintiffs received a $2000 advance ($1000 each) from Levant & Partners for the sub-publishing agreement. The sub-publishing agreement between plaintiffs and Levant & Partners is dated January 1, 2007. In executing the sub-publishing agreement, plaintiffs understood that the

---

[1] The dates expressed in Murphy's declaration conflict with Murphy's deposition testimony that the song was pitched to Zorina in January or February, 2007. Murphy's deposition also conflicts with the dates indicated in plaintiffs' original complaint, which alleged that plaintiffs entered into an oral contract with Style in November 2006. The discrepancy as to when the song was pitched to Zorina, however, is immaterial.

contract authorized a recording of *Almost Sorry* to be made by Lazarev. Moreover, at that time, plaintiffs had a vague understanding that Style would be recording Lazarev's use of the song.

At some point in late 2006 or early 2007, Lazarev recorded *Almost Sorry* at the Brian Rawlings recording studio in London, U.K., during the term of the original producer's agreement. On May 10, 2007, Lazarev's *TV Show* album, which contained an English-version recording of *Almost Sorry*, was released in Russia and Ukraine. In fact, the song was released on several albums produced by Style. In 2007, Lazarev also recorded a Russian version of the song, *Zachem Pridumali Lyubov*, which was first performed in November 2007.

At some point in 2008, several months after plaintiffs executed the sub-publishing agreement, Sergey Bobza, a representative of Style, contacted Murphy and explained that the plaintiffs had entered into a "bad contract" with Zorina and Levant & Partners. Bobza said that the relationship between Style and Zorina had been on the decline, that Style terminated Zorina, but prior to her termination, Zorina, acting out of spite, had induced authors to sign contracts, such as the sub-publishing agreements, with Levant & Partners, who apparently had no known affiliation with the music industry. Bobza suggested that plaintiffs try to annul the contract and send a letter to Zorina or to Levant & Partners, but plaintiffs did not pursue those options. Bobza also suggested that plaintiffs enter into "what should have been considered a legitimate agreement with Style Records." Specifically, Bobza recommended that the plaintiffs and Style enter into a licensing agreement. At the time of her discussions with Bobza in 2008, Murphy assumed that Lazarev had already recorded *Almost Sorry*.

In February 2008, plaintiffs entered into a license agreement with Style (hereinafter "first license agreement"). The agreement was backdated to November 1, 2006, well before Style and plaintiffs had direct communications. According to Murphy, the agreement was backdated

because "Style wanted to show that they had the rights to the song before [Zorina] since they believed the [sub-publishing agreement] contract to be fraudulent or something of the like."

Under the first license agreement, plaintiffs gave "their permission to record [*Almost Sorry*], performed by Sergey Lazarev." The agreement specified that Lazarev intended to record *Almost Sorry* at the Brian Rawlings Production studio. The plaintiffs agreed to "ensure [Style] (as well as its licensees, affiliates and other third parties that will exploit the recording of [*Almost Sorry*]) with the possibility to receive without hindrance permissions to use [*Almost Sorry*] . . . ." Further, plaintiffs guaranteed "that neither they nor other persons involved in the Composition rights management, will forbid [Style] (as well as [Style's] licensees that will us[e] the recordings of the [*Almost Sorry*] performance) to use [*Almost Sorry*] on condition that [Style] shall pay the fee for any kind of exploitation through a collecting society or a publishing company. . . ." In return, Style agreed to pay plaintiffs $3000 ($1500 each) within ten calendar days of its execution. The agreement contained no other terms specifying another form of payment for the exploitation of *Almost Sorry*, stated that it took effect from the moment of its signing, contained no time limitation, and did not include a choice of law provision.

In April 2008, Aleksey Kruzin, another representative of Style, contacted plaintiffs and circulated a second licensing agreement for *Almost Sorry*. Plaintiffs and Style executed this agreement at some point in May 2008, although the agreement was backdated to November 20, 2006. In pertinent part, the second licensing agreement purported to grant a license from the plaintiffs to Style to exploit *Almost Sorry* worldwide to the extent it was performed by Lazarev and the right to exploit *Almost Sorry* within Russia and certain other countries to the extent it was performed by other artists. The second licensing agreement also permitted Style "to grant sublicenses, i.e. to grant the Rights to third parties (sublicensees), including the right to grant

further sublicenses, solely in order to use [*Almost Sorry*] more effectively in the interests of the Authors." In return, Style agreed to pay plaintiffs a fixed advance of $4000 ($2000 each) and periodic royalty payments as a percentage of Style's profits from exploiting *Almost Sorry*. The second licensing agreement specified that Russian law governs its interpretation and provided that the license term would be "five (5) years commencing on signature hereof." The agreement was signed by Murphy, Landon, and Oleg Lobov, on behalf of Style. Plaintiffs accepted and received the promised $4000 ($2000 each) advance under the second licensing agreement.

On September 7, 2009, the date the producer's agreement expired, Lazarev and Style entered into a supplemental producer's agreement. In the supplemental agreement, Style granted Lazarev the right to use recordings of his performances and to perform compositions, including *Almost Sorry*, for which rights were granted to Style during the term of the original producer's agreement.

Plaintiffs received and accepted royalty payments for the exploitation of *Almost Sorry*. Style was obligated to remit royalties to the Russian Authors Society, which then remitted those payments to BMI, which would in turn remit those payments to plaintiffs. Murphy received and accepted the following royalty payments: $12.34 on January 19, 2010; $436.70 on June 28, 2010; $1190.08 on September 23, 2011; and $217.30 on September 21, 2012. Landon also received royalty payments with respect to the English and Russian versions of *Almost Sorry*. The plaintiffs concede they have never been a party to an agreement with Lazarev. The plaintiffs also admit that they have never attempted to retract, reject, renounce, or withdraw the first or second licensing agreements. Lazarev alleges that he has avoided performing the song since 2010.

On May 28, 2010, Murphy and Landon filed a complaint against Lazarev and Style in the United States District Court for the Middle District of Tennessee. The complaint alleged that plaintiffs entered into an oral contract with Style on or about November 20, 2006, through which they agreed to license *Almost Sorry* to Style. The complaint further alleged that Lazarev recorded *Almost Sorry* in both English and Russian and that the song became popular in Russia. Despite its popularity, plaintiffs alleged that they had been inadequately compensated under the licensing agreement. Without identifying the precise relationships between themselves and Lazarev or between Lazarev and Style, plaintiffs asserted causes of action against Lazarev and Style for (1) breach of contract, (2) copyright infringement under 17 U.S.C. § 501 *et seq.*, and (3) violations of Articles 1301 and 1302 of the Russian Civil Code. Plaintiffs also asserted a separate intentional-misrepresentation claim against Style.

After filing the original complaint, plaintiffs apparently attempted to effect service in Russia on both Lazarev and Style. On January 10, 2011, Lazarev, acting *pro se*, filed a letter with the court in which he acknowledged receipt of the summons and denied plaintiffs' allegations. Lazarev stated that plaintiffs and Style entered into an agreement on November 1, 2006, under which he was authorized to record and perform *Almost Sorry*. Lazarev further averred that, at the time plaintiffs and Style entered into a licensing agreement, he was acting under a separate producer's agreement with Style executed on April 14, 2005. Under this producer's agreement, Lazarev alleged that Style was obliged to enter into licensing agreements with the authors of musical works and compositions and to carry the responsibilities incurred by those agreements. Lazarev alleged that he was not personally responsible for making any royalty payments, responsibilities that were contractually required of Style for the commercial

exploitation of the song's recordings and public performances of the work. Lazarev's letter was docketed as an answer.

On March 3, 2011, the magistrate judge entered a scheduling order, which set a targeted trial date of February 28, 2012. On February 14, 2012, the district court received a telephone call from plaintiffs' counsel inquiring about the target trial date. From this call, the district court surmised that Style was never served. The district court then ordered plaintiffs' counsel to inform the court whether he intended to proceed against Style. On February 22, 2012, the plaintiffs voluntarily dismissed Style.

On March 14, 2012, the plaintiffs sought leave to amend the complaint to assert "continuing infringements" by Lazarev (the only remaining defendant), which the court granted on April 9, 2012. On April 16, 2012, the plaintiffs filed an amended complaint, which remains the operative pleading. The amended complaint alleged that the plaintiffs orally had entered into a November 20, 2006 licensing agreement with Style and that plaintiffs had executed a written licensing agreement in mid-2007. The amended complaint further alleged that Lazarev infringed and continued to infringe the plaintiffs' copyright in *Almost Sorry* by performing, selling, and promoting the work through various forms of media, in violation of federal and Russian law. The plaintiffs asserted the same three causes of action: (1) breach of contract, (2) copyright infringement under 17 U.S.C. § 501 *et seq.*, and (3) violation of Articles 1301 and 1302 of the Russian Civil Code.

On May 16, 2012, counsel entered appearances on behalf of Lazarev, and on May 25, 2012, Lazarev timely filed a motion to dismiss, which the court treated as a motion for summary judgment. On August 22, 2012, the court initially granted the motion. On September 19, 2012, the plaintiffs filed a motion to alter or amend judgment, seeking reconsideration only with

respect to the copyright claims, thus abandoning their breach-of-contract and Russian-law claims. First, the plaintiffs argued that the licensing agreement dated November 20, 2006 was for a five-year term and, thus, had expired by its terms on November 20, 2011. Second, based on the complete translations of the producer's agreements between Lazarev and Style, which did not specifically reference *Almost Sorry*, the plaintiffs argued that the producer's agreements did not convey a valid sub-license to Lazarev. On December 12, 2012, the district court granted plaintiffs' motion to alter or amend, concluding that further discovery was warranted. In particular, the court noted that the relationship between the November 1, 2006 agreement (the first licensing agreement which contained no time limitation) and the November 20, 2006 agreement (the second licensing agreement which contained a five-year time limitation) was unclear. The court also observed that it was unclear when those agreements became operative.

On September 11, 2013, Lazarev filed a renewed motion for summary judgment. In support of that motion, Lazarev filed a stipulation; declarations of Alexei Smirnow, Ilya Mikhailenko, and of himself; deposition testimony given by Landon, Murphy, and himself; a statement of undisputed material facts, and a memorandum of law. In response, the plaintiffs filed a memorandum of law, a response to Lazarev's statement of undisputed material facts, and a declaration of Murphy. In opposition to Lazarev's motion for summary judgment, the plaintiffs argued (1) that Lazarev waived his "license" and "sub-license" defenses by failing to file an answer to the amended complaint, (2) that Lazarev did not have a valid sub-license to use *Almost Sorry* before 2008, and (3) Lazarev's sub-license expired in 2009, making any exploitation of *Almost Sorry* after that date unlawful.

The district court granted summary judgment to Lazarev. First, the court held that Lazarev did not waive the defenses argued in support of his motion for summary judgment. The

court found that, even though Lazarev did not formally file an answer to the amended complaint, the plaintiffs had been on notice of these defenses since the early stages of the case and had "a full and fair opportunity to probe those defenses."

Second, the district court found that, at a minimum, Style possessed a valid license to *Almost Sorry* as of February 2008 and that the second licensing agreement remained in effect from May 2008 to May 2013, when it expired. The district court reasoned that (1) the first and second licensing agreements between plaintiffs and Style were valid under Russian law and that the terms of the latter supplemented and amended the former; (2) because Style acquired the license to *Almost Sorry* before the expiration date of the original producer's agreement, Lazarev possessed a valid sub-license from at least May 2008 through September 7, 2009; and (3) because Style and Lazarev agreed to extend the provisions of the producer's agreement in the supplemental producer's agreement, Lazarev possessed a valid sub-license for the same time frame that Style possessed a valid license—*i.e.*, through May 2013. The district court additionally found that plaintiffs retained full rights to *Almost Sorry* since May 2013 but that the record contained no evidence that Lazarev performed it after that time. The district court noted that because of the expiration of the license and associated sub-license, Lazarev can no longer legally exploit *Almost Sorry* without reaching an agreement with the plaintiffs.

Third, the district court rejected plaintiffs' contention that Lazarev lacked a valid sub-license to use *Almost Sorry* before February 2008. The district court found that the sub-publishing agreement with Levant & Partners specifically authorized Lazarev to record and perform *Almost Sorry*, which reflected plaintiffs' understanding and intention at the time. The district court also found that, in the first and second license agreements, the plaintiffs specifically

entered into agreements that they intended to govern Lazarev's recordings of *Almost Sorry* retroactive to November 2006.

The district court concluded by noting that if the plaintiffs are correct that Style failed to pay them required royalties under the first or second licensing agreements, it is Style, not Lazarev, who is at fault. The district court noted, however, that plaintiffs chose not to pursue Levant & Partners, Zorina, or Style. Accordingly, the district court entered final judgment for Lazarev. Plaintiffs timely filed a notice of appeal.

II.

On appeal, plaintiffs argue that the district court erred in holding that Lazarev did not waive his affirmative defenses by failing to file an answer to their amended complaint. We review a finding that a party did not waive an affirmative defense for abuse of discretion. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Plaintiffs point to Rule 8 and categorically assert that failure to plead an affirmative defense results in a waiver of that defense. But "[f]ailure to raise an affirmative defense by responsive pleading does not always result in waiver." *Smith*, 117 F.3d at 969 (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993)). "The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond." *Id.* (citing *Coffey*, 992 F.2d at 1445). "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" *Coffey*, 992 F.2d at 1445 (quoting *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989)).

In this case, plaintiffs received notice of Lazarev's defenses that he had a valid license and sublicense to use *Almost Sorry* from the inception of the case. In his *pro se* letter, filed on

January 10, 2011, which the district court docketed as an answer, Lazarev asserted he had a sublicense and license to use *Almost Sorry* pursuant to the licensing agreements between plaintiffs and Style and the producer's agreements between Style and himself. Lazarev attached to his letter the first licensing agreement, the original producer's agreement, and the supplemental producer's agreement. Lazarev filed the same letter on May 4, 2011. And, after he was represented by counsel, Lazarev filed a motion to dismiss that relied on the affirmative defenses of license and sublicense, which the court considered in ruling upon that motion and upon plaintiffs' motion to alter or amend the judgment. Even though Lazarev did not file an answer to the amended complaint, plaintiffs were on notice of his affirmative defenses from an early stage in the lawsuit, thus satisfying the purposes of Rule 8. *See Smith*, 117 F.3d at 969. Therefore, the district court did not abuse its discretion by concluding that Lazarev did not waive his affirmative defenses argued in support of his motion for summary judgment.

Plaintiffs also reassert their argument that Lazarev infringed their copyright to *Almost Sorry*. The district court granted summary judgment to Lazarev on plaintiffs' copyright-infringement claim, and this court reviews that decision *de novo*. *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Plaintiffs offer two arguments in support of their claim: First, they allege that Lazarev lacked a valid license to use their work before February 2008 when plaintiffs expressly entered into a license agreement with Style. Second, they renew their contention that Lazarev's sub-license expired in 2009 and "[t]herefore, any use of . . . *Almost Sorry* and *Zachem Pridumali Lyubov* from 2009 to present was without a valid sublicense and constituted infringement of Plaintiffs' copyright." Presumably, plaintiffs' argument refers to September 7, 2009, the date the original producer's agreement between Lazarev and Style expired. The district court correctly rejected these arguments, and we "may affirm for any

reason supported by the record." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

"[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). "The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law. . . ." 17 U.S.C. § 201(d)(1). A copyright owner who grants an exclusive or nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement. *See Sony*, 464 U.S. at 433; *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). A written and signed conveyance is necessary to find an exclusive license to use copyright material. Under 17 U.S.C. § 101, an exclusive license is a "transfer of copyright ownership" and therefore "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). In contrast, "[a] non-exclusive license may be granted orally, or may be implied from conduct." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998) (alteration in original) (quoting M. Nimmer and D. Nimmer, 3 *Nimmer on Copyright* § 10.03[A], at 10–38 (1994)). This is true because a nonexclusive license is not a transfer of ownership under 17 U.S.C. § 101 "and is not, therefore, subject to the writing requirement of § 204." *Id.* (citing 17 U.S.C. § 101; *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)). The key to finding an implied license is in the intent of the copyright holder. *See Johnson*, 149 F.3d at 502 ("Without intent, there can be no implied license."); *see also John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 40−41 (1st Cir. 2003); *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514–16 (4th Cir. 2002). Like an express license, "the

existence of an implied license to use the copyright for a particular purpose precludes a finding of infringement." *Johnson*, 149 F.3d at 500 (citing *Effects*, 908 F.2d at 559; *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996)).

Plaintiffs' claim that Lazarev infringed their copyright after 2009 fails because Lazarev had a valid, express sublicense to use *Almost Sorry* until May 2013. In May 2008, plaintiffs executed a second licensing agreement with Style. This agreement was valid throughout its term, which ran for five years from its execution—that is, until May 2013. The second licensing agreement also included a choice of law provision stating that Russian law applies.

Under Russian law, the second licensing agreement, in combination with the producer's agreement, endowed Lazarev with a sublicense to use *Almost Sorry*.[2] In the second licensing

---

[2] Several provisions of the Civil Code of the Russian Federation are relevant. First, Article 431 states:

> While interpreting the terms of the contract, the court shall take into account the literal meaning of the words and expressions, contained in it. The literal meaning of the terms of the contract in case of its being vague shall be identified by way of comparison with the other terms and with the meaning of the contract as a whole. If the rules, contained in the first part of the present Article, do not make it possible to identify the content of the contract, the actual common will of the parties shall be found out with account for the purpose of the contract. All the corresponding circumstances, including the negotiations and the correspondence, preceding the conclusion of the contract, the habitual practices in the relationships between the parties, the customs of the business turnover and the subsequent behavior of the parties shall be taken into account.

Grazhdanskii Kodeks Rossiiskoi Federatsii [GK RF] [Civil Code] art. 431 (Russ.). Further, Article 1238, "Sublicense Contract" states:

> 1. With the written consent by the licensor the licensee shall have the right to grant under a contract the right to use a result of intellectual activity or a means of individualization to another person (sublicense contract).
> 2. Under a sublicense contract the sublicensee shall be granted the right to use a result of intellectual activity or means of individualization only within the limits

agreement, which modified and amended the first licensing agreement, plaintiffs entitled Style to grant sublicenses. And under the terms of the producer's agreement, Lazarev was required to record and perform music for which Style obtained rights during the agreement's duration. Because plaintiffs granted Style a license to use *Almost Sorry* before the expiration of the original producer's agreement between Lazarev and Style, Lazarev possessed a valid sublicense to use that work through September 7, 2009, when the original producer's agreement expired. And because, in the supplemental producer's agreement, executed on September 7, 2009, Style granted Lazarev a license to use compositions, including *Almost Sorry*, that were received by Style during the term of the original producer's agreement, Lazarev continued to possess a valid sublicense until the term of the second licensing agreement between plaintiffs and Style expired in May 2013. Moreover, in the second licensing agreement, plaintiffs explicitly authorized Style to use *Almost Sorry* in the territory of all the countries of the world if *Almost Sorry* was performed by Lazarev. We find that the second licensing agreement, in combination with the producer's agreement, created a sublicense in Lazarev to use *Almost Sorry* from May 2008 to May 2013. Furthermore, the district court correctly found that the record contains no evidence that Lazarev used *Almost Sorry* after May 2013.

---

of those rights and those means as provided for by the license contract for the licensee.

3. The sublicense contract concluded for a time period exceeding the duration of the license contract shall be considered as concluded for the duration of the license contract.

4. The licensee shall bear liability to the licensor for actions of the sublicensee unless the license contract provides otherwise.

5. The provisions of the present Code on a license contract shall apply to the sublicense contract.

*Id.*, art. 1238; *see also* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source . . . whether or not submitted by a party. . . .").

We also reject plaintiffs' argument that Lazarev infringed their copyright before 2008, that is, before they entered the first and second licensing agreements with Style. As of late 2006 or early 2007, plaintiffs intended to authorize Lazarev to record and perform *Almost Sorry*. First, in June and November 2006, Murphy or Murphy's mother pitched *Almost Sorry* to Zorina, Lazarev's agent at the time. Second, in the sub-publishing agreement that plaintiffs entered into with Levant & Partners on January 1, 2007, plaintiffs plainly authorized Lazarev to record and perform *Almost Sorry*. That agreement provided that plaintiffs transferred to Levant & Partners "the exclusive rights to *Almost Sorry* in the territory of all the countries with the exception of Russia and CIS (the countries of the former Soviet Union but including Latvia, Lithuania, Estonia) only in the performance of artist, <u>Sergey Lazarev</u>."[3] Third, plaintiffs' first and second licensing agreements with Style evince plaintiffs' intent to authorize Lazarev's use of the song as of late 2006. Plaintiffs intended that those agreements, which effectively granted Lazarev a sublicense to use *Almost Sorry*, be applied retroactively to November 1, 2006, the date at which plaintiffs and Style backdated the first licensing agreement. Therefore, because plaintiffs intended to authorize Lazarev to use that work in late 2006 and early 2007, plaintiffs' claim that

---

[3] The sub-publisher's agreement with Levant & Partners did not contain a choice of law provision. The parties have not engaged in a choice of law analysis with respect to that agreement. But it does not matter whether Russian law or Tennessee law applies. Under either body of law, the agreement authorizes Lazarev to record and perform *Almost Sorry*. *Compare Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000) ("When the language of the contract is plain and unambiguous, the court must determine the parties' intention from the four corners of contract, interpreting and enforcing it as written."), *with* Grazhdanskii Kodeks Rossiiskoi Federatsii [GK RF] [Civil Code] art. 431 (Russ.) ("While interpreting the terms of the contract, the court shall take into account the literal meaning of the words and expressions, contained in it."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").

Lazarev infringed their copyright to *Almost Sorry* before February 2008 fails. *See Sony*, 464 U.S. at 433.

III.

For the foregoing reasons, the judgment of the district court is affirmed.