**Esly B. WILLIAMS, Plaintiff–Appellant,**

v.

**CITY OF RIVER ROUGE, Daniel Cooney, Michael Bowdler, Danny Stevens, and Charles Prather, Defendants–Appellees.**

**No. 89–2003.**

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1990.

Decided July 16, 1990.

Donald J. Gasiorek, Lionel J. Postic (argued), Sommers, Schwartz, Silver & Schwartz, Southfield, Mich., for plaintiff-appellant.

David A. Bajorek, River Rouge, Mich., David M. Caplan (argued), Southfield, Mich., for defendants-appellees.

Before WELLFORD and BOGGS, Circuit Judges, and DOWD, District Judge.*

BOGGS, Circuit Judge.

Esly B. Williams was dismissed in 1988 from his position as City Attorney for the City of River Rouge because of political and personal incompatibility with newly-elected Mayor Daniel Cooney. He now seeks relief under 42 U.S.C. § 1983 and pendent state contract claims. We affirm the district court in holding that Williams's dismissal did not violate the first amendment but we reverse its grant of summary judgment to defendants on the contract claims and remand for dismissal of those claims without prejudice.

## I

The City Charter of River Rouge provides for a City Attorney, but does not specify any duties of the office-holder. Williams was appointed Assistant City Attorney in 1977 upon the election of his long-time friend, James Doig, as Mayor of River Rouge. In 1986, when the (then) City Attorney was appointed to a judicial post, Williams was elevated to City Attorney. A majority of the City Council approved the appointment. Shortly after Mayor Doig's reelection in April 1987, Williams was reappointed City Attorney for a two year term, pursuant to Section 80 of the River Rouge City Charter ("[O]n the second Tuesday after the first Monday in April of each and every odd-numbered year ... there shall be appointed one attorney," who "shall hold office until the next regular time herein provided for appointment to be made to such office."). The City Council voted to concur in that appointment on May 19, 1987.

In addition to serving as City Attorney, Williams was also a full-time high school teacher in the River Rouge school system. He performed the City Attorney job on a part-time basis. He was employed as needed by the City and paid under a voucher system. The City also directed legal work to the Assistant City Attorney and to private counsel.

During much of Mayor Doig's tenure in office, Daniel Cooney was President of the AFSCME union local and an outspoken critic of the Doig administration. On several occasions, Cooney engaged in adversarial labor negotiations with City Attorney Williams. In April 1987, Cooney ran unsuccessfully against Doig in the general election for mayor. During that campaign, Williams was an active supporter of Doig.

Later in 1987, Cooney was the plaintiff in an action against the City of River Rouge and Mayor Doig seeking an injunction against the City's plan to issue ten million dollars in revenue bonds to fund a water project supported by Mayor Doig. In December 1987, Cooney obtained a judgment that the City was without authority to issue the bonds.

Shortly thereafter, Mayor Doig resigned his office. An interim election was scheduled for April 1988 to fill the remainder of Doig's mayoral term (until April 1989). Cooney entered the race. Williams actively supported Grover Hall, a member of the City Council during the Doig Administration, in his campaign for mayor. That support included distributing campaign literature critical of Cooney's candidacy. During the campaign, Cooney became involved in another legal action against the City concerning the method by which the City would distribute absentee ballots.

Cooney won the election and became mayor. On April 12, 1988, the City Council ratified, by a 4 to 3 vote, Mayor Cooney's decision to dismiss Williams from the position of City Attorney. Appellees Charles Prather, Michael Bowdler, and Danny Stevens were the other members of the City Council who, along with Cooney, voted to dismiss Williams. The City Council re-

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

placed Williams with a full-time City Attorney.

Williams brought the present action in the district court against the City and the four City Council members (including Mayor Cooney) who voted for his termination, claiming that the defendants had breached the terms of his employment, as described in the City Charter, by dismissing him without good cause; that they had in the process violated his constitutional rights; and that his dismissal was made on the basis of race. In particular, the complaint alleged a cause of action under 42 U.S.C. § 1983 for deprivation of liberty and property without due process and for violation of Williams's first amendment rights of speech and association;[1] a cause of action under 42 U.S.C. § 1985 for conspiracy to deny civil rights because of dismissal on account of race; breach of Williams's employment contract, as embodied in the City Charter; violation of Michigan statute M.C.L. § 168.321 for failure to comply with the terms of the City Charter;[2] and violation of the Elliott–Larsen Civil Rights Act (M.C.L. § 37.2101 et seq.) for race discrimination. Williams later dropped the race discrimination claims and they are not before this court on appeal.

After discovery, defendants moved for summary judgment. After briefing and argument on the motion, the district court granted summary judgment to the City and the individual defendants on the ground that a partisan city attorney may be turned out by a new mayoral administration and that such termination does not violate the city attorney's first amendment rights. It also dismissed the contract claims on the ground that the Council's political and economic opposition to Williams was a sufficient cause for his termination.

## II

### A. First amendment protection

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court held that the first amendment prevented a county from dismissing its assistant public defenders solely on the basis of their affiliation with a particular political party. The Court noted that political affiliation *could* be the sole basis of termination for public employees who held positions in which political affiliation was relevant to the performance of the job. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Court had held that the first amendment prohibits the politically-motivated dismissal of governmental employees, with the exception of those in policymaking or confidential positions. In *Branti,* the Court elaborated on the "policymaking and confidential" standard:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.[3] The Court did not elaborate on the standard it created, but left it to subsequent courts to determine, on a case-by-case basis, whether political affiliation is an "appropriate requirement for the effective performance of the public office."[4]

---

1. The due process claim was not addressed at the district court and is not pursued on appeal.

2. M.C.L. § 168.321 provides that "[T]he qualifications, nomination, election, appointment, term of office and removal from office of any city officer shall be in accordance with the charter provisions governing the city."

3. Although it has extended the rule of *Elrod* and *Branti* to decisions regarding hiring, promotions, transfers, and recall of low-level government employees, the Supreme Court has not disturbed the *Branti* exception for employees for whom "political affiliation is relevant to the quality of public service...." *Rutan v. Republican Party of Illinois,* 496 U.S. ——, ——, 110 S.Ct. 2729, 2745, 111 L.Ed.2d 52 (1990).

4. Although the dispute in *Branti* concerned membership in different political parties, the reasoning of the Supreme Court in that case has been understood to apply to political differences of any kind, not merely differences in party membership. See, for example, *Balogh v. Charron,* 855 F.2d 356 (6th Cir.1988). In this case, as in *Balogh,* "political affiliation" refers to com-

Appellees have shown that City Attorney of River Rouge is a position for which political affiliation is an appropriate requirement for the effective performance of the office. In *Branti*, the Court explained that although public defenders were public employees, their primary duty was to the persons they represented, not the public at large. By contrast, the City Attorney's primary duty is "to the people of the City of River Rouge through their elected officials," as counsel phrased it at argument. Mayor Cooney and Commissioner Prather stated in affidavits that their decision to vote against Williams's continued employment was based on their political opposition to Williams and the administration of former Mayor Doig. Cooney stated that upon his election as mayor, he

> believed that in order for me to be an effective administrator of City Government, it was necessary that a City Attorney be appointed in whom I had trust and confidence.... I sincerely believed, and still believe, that the trust and confidence necessary for a workable Mayor/City Attorney (attorney/client) relationship was not possible with Esly Williams serving as City Attorney.

Prather stated that

> I believed, and continue to believe, that I could not trust Esly Williams to provide me with legal advice and counsel free from the effect of political motivation and that I could not trust him to maintain the confidentiality of the issues discussed and believed, to the contrary, that Esly Williams would, whenever possible, violate that confidence to the detriment of myself, the Mayor and the City and to the benefit of those he supported politically.

Williams's partisan campaign activity against Cooney, his close political and personal ties to Mayor Doig, the political differences between Doig and Cooney, and Williams's adversarial interaction with Cooney during labor disputes between the union and the City all indicate that Williams would have difficulty in establishing a confidential relationship with the new mayor. Of course, the unlikelihood of a close relationship between Williams and Mayor Cooney is relevant only if such a relationship is important to the effective performance of the City Attorney's job. This goes to the question of whether the City Attorney of River Rouge is by its nature a position for which political affiliation is relevant to effective performance. We believe appellees have shown that it is. Although the specific duties of the City Attorney are not spelled out in the River Rouge City Charter, the record in this case illustrates that the City Attorney can be involved in defending the city against suits arising out of disputes over City policy—such as the bond issue proposal—and in negotiating on the City's behalf in contract disputes.

 When examining a public office for first amendment protection against politically-motivated dismissal, the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office. *Meeks v. Grimes*, 779 F.2d 417, 419 n. 1 (7th Cir.1985); *Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir.1981). It is possible that a city attorney working under a voucher system such as the one in effect during Williams's tenure would not be as closely involved in the City's affairs as a full-time city attorney would be.[5] However, there is no evidence that Williams's work was largely ministerial. In any event, such an argument would miss the point that, whatever the practice during Williams's tenure, the City Attorney *could* be employed by the Mayor and City Council

monality of political purpose and support, not political party membership.

5. Whether that was the case for Williams is unclear. In the district court, counsel for defendants indicated that Williams performed less work for the City than did the Assistant City Attorney. The suggestion was also made that Williams's position as City Attorney was largely honorific. On the other hand, Williams enjoyed close ties to the Mayor, worked on sensitive matters such as the water project bond dispute, and apparently did enough work to be paid in excess of fifty thousand dollars for each of several recent years. (Transcript of hearing on defendants' motion for summary judgment, at 18.)

in a way that required confidentiality. Although there is apparently no statutory or regulatory requirement that the City direct its legal work to the City Attorney, the parties indicated at argument that the City Attorney could be employed by the City to give legal advice, to act as the City's solicitor, handling its litigation, to represent City officials in litigation, and to perform some of the City's prosecutions. Therefore, it is necessary to consider the position of City Attorney itself, rather than the position as performed by appellant. Any other approach would tend to bind a later mayor to employ the City Attorney in the way that the official had been employed in the past. It appears that the new Administration in River Rouge wanted to move in the direction of a more active and involved City Attorney with its transformation of the job into a full-time position. The duties inherent in the position of the City Attorney indicate that a relationship of confidence and trust between the City Attorney and the Mayor and Council is necessary to the effective performance of the job. Thus, under *Branti*, the City Attorney does not enjoy first amendment protection against politically-motivated dismissal.

Although *Branti* left it to courts to make the case-by-case decision whether a particular government employee qualified for first amendment protection against politically-motivated dismissal, courts that have decided whether city and county attorneys are so protected have almost uniformly found that they are not. In *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981), the Third Circuit applied the *Branti* standard and concluded that city solicitor and assistant city solicitor were positions for which party affiliation was an appropriate requirement for effective performance, and therefore the mayor's dismissal of those attorneys because of their political affiliation did not violate the first amendment. It examined the municipal code and noted that the attorney performed functions intimately related to city policy, such as rendering legal opinions, drafting ordinances, and negotiating contracts. The court stated that the mayor was entitled to "the complete cooperation and loyalty of a trusted advisor." 660 F.2d at 522.

Several other courts have also upheld the politically-motivated dismissals of government attorneys. *Livas v. Petka*, 711 F.2d 798 (7th Cir.1983) (assistant state prosecutor); *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.) (deputy city attorney), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); *O'Connell v. Gorski*, 715 F.Supp. 1201 (W.D.N.Y.1989) (rational connection existed between shared ideology and job performance of assistant county attorney); *Finkelstein v. Barthelemy*, 678 F.Supp. 1255 (E.D.La.1988) (city attorney could be fired for not supporting mayor's unsuccessful property bill); *Mummau v. Ranck*, 531 F.Supp. 402 (E.D.Pa.) (assistant district attorney who only prosecuted juvenile cases), *aff'd per curiam*, 687 F.2d 9 (3d Cir.1982) (extending holding in *Ness* from civil to criminal attorneys); *Bavoso v. Harding*, 507 F.Supp. 313 (S.D.N.Y.1980) (city corporation counsel); *Montaquila v. St. Cyr*, 433 A.2d 206 (R.I.1981) (town solicitor and assistant solicitor). But compare *Finkelstein v. Bergna*, 881 F.2d 702 (9th Cir.1989) (no bar to plaintiff's first amendment claim due solely to his status as assistant district attorney).

Appellants state that their best cases, aside from *Branti*, are *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Meeks v. Grimes*, 779 F.2d 417 (7th Cir.1985). However, each is distinguishable from the present case. The sheriff's office employees in *Elrod* and the city court bailiffs in *Meeks* could perform their jobs effectively without sharing the political views of their superiors. More important, serious divergences of view would be less likely to impair the working relationship between those employees and their superiors than they would the relationship between the City Attorney and the Mayor and City Council of River Rouge.

Given the function of a city attorney and the decisions of courts that have addressed the issue, it is difficult to imagine a set of facts under which it would violate the first amendment to fire a city attorney for purely political reasons. The plaintiffs in *Ness*

argued, unsuccessfully, that their jobs were politically neutral and essentially technical in nature; they merely gave legal advice when requested to do so. That argument did not succeed in *Ness* and it cannot prevail here. Williams was not part of a "large infrastructure composed of more or less ministerial employees who carry out policy mandates." *Meeks v. Grimes*, 779 F.2d at 422. The record shows that appellant was closely allied politically and personally to the former mayor and his policies, and that both the former mayor and his policies were incompatible with the new mayor.

### B. Contract claims

Appellant's breach of contract claim is based on the argument that his position as City Attorney is one of determinate length—two years—and that he cannot be removed from that position except for good cause. Appellant was last appointed in 1987. Consequently, he argues that his removal by the City Council in 1988 for political reasons constituted a breach of his employment contract. Appellant bases his argument on the terms in the City Charter, the relevant parts of which state:

Sec. 79 *Appointive officers; enumeration; appointment procedure.*—The mayor shall by and with the consent of the council appoint one attorney, . . . .

Sec. 80 *Initial appointments, term; subsequent appointments, time term.*— At the first regular meeting of the council after the adoption of this charter there shall be appointed as above provided, one attorney, . . . [who] shall hold office until the next regular time herein provided for appointment to be made to such office. . . . [O]n the second Tuesday after the first Monday in April of each and every odd numbered year thereafter, there shall be appointed one attorney. . . .

Sec. 81 *Appointive officers; oath required; tenure of office.*—. . . All persons appointed under the provisions of this charter . . . shall, after their term of office has expired, continue to hold such office until their successors are appointed, qualify and enter upon the duties of

their offices, unless they shall be sooner removed by a majority vote of the council.

The charter presents at least a colorable argument that the City Attorney has an employment contract of determinate length and that his employment is not at-will. The reference in Section 81 to removal by a majority of the Council arguably applies only after the expiration of a term.

■ Appellant maintains that summary judgment for defendants on his contract claims was improper because a genuine issue remains as to whether good cause existed for his dismissal. The reasons given by Mayor Cooney and Commissioner Prather in their affidavits were (1) Appellant's affiliation with their political opponent, former Mayor Doig, and (2) their involvement in legal disputes with the city during the tenure of Williams as City Attorney. Consequently, they could not have trust and confidence in Williams and could not work with him as City Attorney. Appellees Bowdler and Stevens, the other two Council members who voted to remove Williams, stated that their reasons for voting to dismiss Williams were economic; they found the voucher system expensive and favored appointment of a full-time City Attorney for the sake of economic efficiency. The district court simply stated that cause for dismissal existed because Williams was "too expensive" and was "a political opponent of the Mayor."

Appellees argue that the relationship between the City Attorney and the City was governed by the standard rules of the attorney-client relationship, under which a client may dismiss the services of his attorney at any time for any reason. They argue that Michigan law dictates that result, even if the City Charter can be read to create a contractual right in the job. First, the Home Rule City's Act (M.C.L. § 117.36) provides that "No provision of any city charter shall conflict with or contravene the provisions of any general law of the state." Second, Michigan law (M.C.L. § 600.904) authorizes the Michigan Supreme Court to provide for the organiza-

tion, government and membership of the state bar. And third, the Michigan Supreme Court has adopted the Code of Professional Responsibility and Canons, which provides (at DR 1–101) that employment of an attorney shall be employment at will.

The question of whether violation of a canon or disciplinary rule in the Code of Professional Responsibility would vitiate an otherwise valid employment contract between the City Attorney and the City is unresolved. Such a violation might merely expose the City Attorney to professional discipline, without having any effect on the enforceability of his employment contract.

We hold that there remains a genuine issue of material fact as to appellant's contract claims; namely, whether good cause existed for Williams's removal. In addition to that unresolved question of fact, there remains an unresolved question of law as to whether the River Rouge City Charter creates a contractual right to a two-year term of employment for the City Attorney absent good cause for dismissal. For the reasons discussed below, we decline to address that question of law here.

### III

Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well. *Finkelstein v. Barthelemy*, 678 F.Supp. at 1261–62 (citing *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 859 (5th Cir.1986); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); and *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349–50 & n. 7, 108 S.Ct. 614, 619 & n. 7, 98 L.Ed.2d 720 (1988).) Pendent jurisdiction is a doctrine of discretion. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. In this case, the federal constitutional claims, which formed the basis for federal jurisdiction over the case, were properly dismissed by summary judgment before trial. Consequently, the contract claims will be dismissed. Moreover, the contract claims require interpretations of the City Charter of River Rouge and of Michigan contract law, questions more properly addressed by the Michigan courts. Therefore, the dismissal will be without prejudice.

### IV

Accordingly, we affirm the decision of the district court insofar as it holds that appellant's dismissal did not constitute a violation of his first amendment rights. We reverse the summary judgment on appellant's contract claims, and remand the case to the district court with instructions to dismiss appellant's contract claims without prejudice.