**Gwendolyn HARRIS, Plaintiff,**

v.

**LINCOLN ELECTRIC,
et al., Defendants.**

**No. 96CV2697.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 6, 1998.

720

Steven M. Weiss, Gwen Harris, Weiss, Kwait & Associates, Cleveland, OH, for Gwendolyn Harris, plaintiff.

Nicholas D. Satullo, Reminger & Reminger, Cleveland, OH, for Lincoln Electric, defendant.

Michael J. Flament, Shawn P. Martin, Cleveland, OH, for Denny Shimco, defendant.

### *MEMORANDUM AND ORDER*

HEMANN, United States Magistrate Judge.

This case is before the magistrate judge pursuant to consent of the parties. Pending before the court are Defendant Lincoln Electric's Motion for Summary Judgment (docket # 33) and Defendant Dennis Shimko's Motion for Summary Judgment (docket # 38). Plaintiff opposes both motions. For the reasons set forth below, Defendants' Motions for Summary Judgment are granted.

## I. BACKGROUND

Plaintiff, Gwendolyn Harris ("Harris"), alleges that Defendants Lincoln Electric ("Lincoln") and Dennis Shimko ("Shimko")

are liable for sexual harassment pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and Ohio Revised Code ("O.R.C.") § 4112.99; that Lincoln retaliated against her for filing a claim of sexual harassment with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII and O.R.C. § 4112.99; and that Lincoln and Shimko are liable for Intentional Infliction of Emotional Distress and Negligence. Lincoln is an Ohio corporation with its principal place of business in Cleveland, Ohio. In April 1990 Lincoln employed Harris as an assembly line worker. In January 1994 Harris was moved to an assembly line known as the SP–250 line. The production and quality control of the individual lines are the responsibility of the Manufacturing Assurance Specialist, referred to as the "Masman." In 1994 Shimko was the Masman for the SP–250 line.

On at least six occasions beginning in March 1994, Harris alleges that as she walked by Shimko's desk he leaned back in his chair, faced her and openly massaged his genital area. (Affidavit of Gwendolyn Harris ("Harris Aff.") at ¶ 10.) She states that after the first incident she told Shimko that she did not want to be treated in that manner. (Harris Aff. at ¶ 11.) Harris further alleges that on September 16, 1994 Shimko came by her work station with William Dolan ("Dolan"), a summer intern, and that Shimko, within hearing of Harris, asked Dolan, "If I had sex with her do you think that it would kill me?" (Harris Aff. at ¶¶ 12, 13.) Harris immediately left her work station and went to the Human Resources Department where she complained about Shimko's conduct to Gil Frey ("Frey"), Lincoln's Director of Employee Benefits and Relations. (Harris Aff. at ¶ 16; Deposition of Gil Frey ("Frey Dep.") at 4.) Frey told Harris that he would look into the matter. (Deposition of Gwendolyn Harris ("Harris Dep.") at 26.)

When Harris returned to her work station, she met Terrence Maglich ("Mag-lich"), her foreman. Maglich reprimanded Harris for leaving her work station. After Harris told Maglich about Shimko's behavior, Maglich accompanied her to the office of Rick Tytko, the plant superintendent. (Harris Aff. at ¶¶ 17–19). Tytko told Harris that he would investigate her allegation that Shimko was harassing her. (Harris Aff. at ¶ 19.) Approximately two days later, Harris met with Frey, Maglich and Shimko. Frey told Harris that Shimko admitted to having a habit of massaging his genitals and that Shimko indicated that he would stop his misconduct. (Harris Aff. at ¶ 20.) Harris states that subsequently there were no further inappropriate comments directed to her. Shimko continued, however, to massage his genital area, although his conduct was not necessarily directed at Harris personally. (Harris Aff. at ¶¶ 22, 24.)

Harris was dissatisfied with Lincoln's response and attempted to meet with Lincoln's Chief Executive Officer ("CEO"), who was unavailable. Subsequently, she met with Frey and asked to be moved to a different area of the plant. (Harris Aff. at ¶ 27.) On approximately October 16, 1994 Harris met with Paul Beddia ("Beddia"), the head of Lincoln's Human Resources Department. Following the meeting, Shimko was suspended from work for five days. (Harris Aff. at ¶¶ 29, 31.)

Approximately a week and a half after her meeting with Beddia, Harris took a two month leave of absence because of the stress that she experienced working with Shimko. (Harris Dep. at 41.) She understood that when she returned to work she would again be assigned to work on the 250–line near Shimko. Her doctor wrote Lincoln stating that Harris should be moved to a new environment. (Harris Dep. at 42.) When she returned to work in January 1995, Harris was transferred to a new area and did not work with Shimko again. (Harris Dep. at 42.)

Harris filed a complaint with the EEOC in November 1994 (Harris Dep. at 44.) and received a right-to-sue letter dated Sep-

tember 18, 1996. She filed her complaint in this court on December 16, 1996. Defendants' summary judgment motions are briefed, and discovery has been completed for the purpose of ruling on the motions.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548. In this way summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324, 106 S.Ct. 2548. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.*

The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. The court's treatment of facts and inferences in a light favorable to the nonmoving party not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ." *Id.* A

scintilla of evidence in favor of the non-moving party is not sufficient. The issue which the court must determine is whether there is evidence on which a jury could reasonably find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989).

## III. LAW AND ANALYSIS

### A. *Sexual Harassment*

■ Title VII prohibits employers from discriminating against any individual with respect to the terms and conditions of his/her employment because of the individual's sex. 42 U.S.C. § 2000e–2(a)(1). Sexual harassment in the work place constitutes discrimination based on sex. *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997). There are two forms of sexual harassment: (1) *quid pro quo*, in which a supervisor requests sexual favors in exchange for job benefits and (2) *hostile work environment*, in which a pervasive atmosphere of sexual harassment creates an objectively hostile work environment. *Id.* Harris alleges that Lincoln and Shimko are liable for hostile work environment harassment.

■ Harris sued Shimko individually on her Title VII claim of sexual harassment. However, since filing her lawsuit, Harris acknowledges that the Sixth Circuit has held that there is no individual liability under Title VII. (Plaintiff's reply to Shimko's motion for summary judgment at 4.) *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) (holding that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII"). Because Shimko is not an employer under Title VII, he is entitled to summary judgment on Harris' Title VII claim.

■ Lincoln, however, is an employer that may be held liable for hostile work environment harassment under Title VII. "Hostile work environment cases distin-

guish between harassment by supervisors and harassment by co-workers." *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d at 872. In supervisor sexual harassment cases, the employer is liable for the actions of its supervisor *without regard to* whether the employer actually knew, or should have known, of the harrasser's misconduct. In co-worker cases the plaintiff must show that the employer knew, or should have known, of the misconduct.[1] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803–03 (6th Cir.1994). The distinction is not significant in this case because the evidence shows that Harris reported the incidents of Shimko's misconduct to Lincoln officials. Thus it is undisputed that Lincoln knew of Shimko's misconduct.

■ In a hostile work environment claim an employer is not liable for the misconduct of a supervisor if the employer "responded adequately and effectively." *Id.* at 803. Similarly, where the harasser is a co-worker, the employer is not liable if it knew or should have known of the misconduct and then took prompt and appropriate corrective action. *Id.* at 804.

■ For the purposes of the summary judgment motion, Lincoln assumes that Harris was a victim of Shimco's sexual harassment.[2] Lincoln, however, argues that it took prompt and appropriate action in responding to Harris' charge of sexual harassment and thus plaintiff cannot meet her burden. The court agrees that based upon the undisputed facts, Lincoln took reasonable steps under the circumstances to end the harassment. Although Harris states that Shimko's genital massaging be-

havior began in March 1994, she did not notify Lincoln about the behavior until September 16, 1994, the date that Shimko made the harassing remark regarding Harris to the summer intern. On that date Harris first went to the Human Resources Department and reported Shimko's behavior to Frey, who told her that he would look into the matter.

On September 16 Harris also reported Shimko to her foreman, Maglich, who then accompanied her to Plant Supervisor Tytko's office. Tytko told Harris that he would investigate her allegation. Within approximately two days (Harris Aff. at ¶ 20), Frey and Maglich met with Harris and Shimko. At that meeting Frey told Harris that Shimko admitted that he had a problem and also that he agreed to stop his misconduct. Frey told Shimko that his behavior was unacceptable. (Frey Dep. at 60.) Two days was a reasonable time for Lincoln officials to conduct an investigation and respond to Harris regarding her complaint. Because this was the first complaint regarding Shimko (Deposition of Gil Frey ("Frey Dep.") at 13–14) and Shimko admitted his problem and agreed to stop his improper conduct, Lincoln's verbal warning to Shimko was not an unreasonable corrective action.

Harris states that there were no further abusive comments. She states, however, that Shimko continued to massage his genital area, although she admits that it was not "necessarily directed at me, personally." (Harris Aff. at ¶ 24.) Harris tried to schedule a meeting with Lincoln's CEO to discuss the matter, but he was unavailable

---

1. The evidence is that Shimko was a co-worker of Harris. Although as a masman Shimko might oversee the quality of the product on the line at which Harris worked, he did not act in a supervisory capacity over her. There is no evidence that he would have any authority or input into a decision to hire, fire, promote or discipline her. *See Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 184–85 (6th Cir.1992). Further, Harris testified that Shimko never inspected her work because she always asked a different masman to help her. (Harris Dep. at 19.)

2. Whether there is sexual harassment is determined by looking at the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

until later in the month. Subsequently, on October 16, 1994, Harris met with Beddia and told him that Dolan had witnessed Shimko's inappropriate comment. Harris had not previously told any Lincoln official that there was a witness. (Harris Dep. at 40.) Shimko was suspended for five days.

The record shows that Lincoln was responsive to Harris' continued complaints regarding Shimko and that Lincoln's personnel officials met with her in a timely manner. In response to her continued complaints, Shimko was suspended. Considering the degree of severity of the alleged behavior, which was limited to Shimko's continued inappropriate massaging "not necessarily directed at Harris," a reasonable jury could not find that Lincoln's response was dilatory under the circumstances.

Harris argues that Lincoln was dilatory in changing her work environment so that she would not be in contact with Shimko. The evidence shows that Harris did not request to be removed from Shimko's area until her meetings with Frey and Beddia in October. During the October 16 meeting, Beddia noticed that Harris seemed stressed and he asked her what he could do to help her. (Harris Dep. at 40.) She requested a move away from Shimko. According to Harris, Beddia responded "that he would look into it and whenever something comes up or whatever, they were going to look to see if they could place me somewhere." (Harris Dep. at 41.) A week and a half after that meeting, Harris went on disability for two months.

Frey testified that Lincoln officials were considering where to move her when she was out on disability. He states:

I'm not sure at what point she knew she was going to be reassigned because there was some extended absence where she was off work. I don't have any absolute recall about that. I remember our decision to do this when she returned and trying to find a job where the earnings potential was as high as where she had been before because we had talked about limiting Shimko's as-

signment and leaving her in the department. And there had been a variety of things that had been thought about and decided that this might be the best opportunity.... But, in any event, ultimately that's where the transfer was and thought it was appropriate and also had a good earnings potential ... you have to make sure that the person is not harmed in any way financially. So we wanted to make sure it was a job assignment that is comparable, piecework, overtime. She would make as much money or more that [sic] she was making on the line.

(Frey Dep. at 10.) It appears that rather than simply moving her hastily, Lincoln officials sought to find an appropriate placement that would give her comparable salary and benefits. Given the level of harassment that she experienced, a reasonable jury could only find that Lincoln acted appropriately in responding to her request for a change in job assignment. Lincoln's response was not unreasonably delayed. "When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Blankenship v. Parke Care Ctrs.*, 123 F.3d at 873. Lincoln's response to Harris' allegations of sexual harassment was not one of indifference. The company's actions were responsive to Harris and demonstrated that the company would not permit sexual harassment in the work place. For the foregoing reasons, Lincoln is entitled to summary judgment on Harris' Title VII claim of sexual harassment.

### B. *Retaliation*

██ Harris alleges that Lincoln retaliated against her by failing to give her the full employee bonus because she filed a charge of sexual harassment with the EEOC in November 1994. Title VII expressly prohibits retaliation against anyone who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"

under the statutory scheme. 42 U.S.C. § 2000e–3(a). To establish a prima facie case Harris must show that (1) she engaged in an activity protected by Title VII; (2) that the exercise of her protected rights was known to Lincoln; (3) that Lincoln thereafter took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Syst., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990).

■ Lincoln argues that it is entitled to summary judgment on Harris' retaliation claim because she has not produced any evidence that a bonus or her compensation was adversely affected. Lincoln submitted an affidavit dated January 28, 1998 from Frey, Lincoln's Director of Employee Benefits and Relations, in which he states that "the amount of bonus or compensation received by Gwendolyn Harris at any time while working for Lincoln Electric, from her hiring to the present, has not been affected by her filing of a discrimination charge or subsequent discrimination lawsuit." (Affidavit of J. Gilbert Frey at ¶ 9.) Harris has not introduced any evidence of a decrease in a bonus or in her compensation. In fact, she did not address her retaliation claim in her brief in opposition to Lincoln's motion for summary judgment. Therefore, the court finds that there is no issue of material fact and Lincoln is entitled to summary judgment on Harris' Title VII claim of retaliation.

## IV. CONCLUSION

For the above stated reasons, Defendant Shimko's Motion for Summary Judgment on the Title VII claims is granted, and Defendant Lincoln's Motion for Summary Judgment on the Title VII claims is granted. "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims

are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir.1990). Therefore, Harris' claims for discrimination pursuant to O.R.C. § 4112.99;[3] Intentional Infliction of Emotional Distress and Negligence are dismissed without prejudice.

**IT IS SO ORDERED.**

### *JUDGMENT ENTRY*

Pursuant to the court's Memorandum and Order filed February 6, 1998, the magistrate judge grants Defendants Dennis Shimko's and Lincoln Electric's Motions for Summary Judgment on the Title VII claims. Plaintiff Gwendolyn Harris' claims for discrimination pursuant to O.R.C. § 4112.99, Intentional Infliction of Emotional Distress and Negligence are dismissed without prejudice.

IT IS SO ORDERED.

---

3. It is particularly appropriate that plaintiff's claims against Shimko pursuant to O.R.C. § 4112.99 be determined by a state court giv-

en the unsettled state of Ohio law as to individual liability.