

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-23-1998

# Wetzel v. Tucker

Precedential or Non-Precedential:

Docket 97-7207

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Wetzel v. Tucker" (1998). *1998 Decisions.* Paper 57.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/57

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-7207

LEWIS W. WETZEL,
Appellant

v.

ROSE TUCKER, Individually and in her capacity as a
Luzerne Co. Commissioner; FRANK P. CROSSIN,
Individually and in his capacity as Luzerne Co.
Commissioner; PETER S. BUTERA, Individually and in his
capacity as a Director of the Northeastern PA Hospital
and Education Authority; JEANNETTE DOMBROSKI,
Individually and in her capacity as a Director of the
Northeastern Pennsylvania Hospital and Education
Authority; YVONNE BOZINSKI, Individually and in her
capacity as a Director of the Northeastern PA Hospital
and Education Authority; NORTHEASTERN PA HOSPITAL
AND EDUCATION AUTHORITY
Appellees

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 94-cv-00660)

Argued: November 6, 1997

Before: BECKER,* ROTH, Circuit Judges, and
DIAMOND, District Judge.**
_____

* Honorable Edward R. Becker, United States Circuit Judge for the Third
Circuit, assumed Chief Judge status on February 1, 1998.

** Honorable Gustave Diamond, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

(Filed March 23, 1998)

        DONALD H. BROBST, ESQUIRE
        (ARGUED)
        Rosenn, Jenkins and Greenwald,
        L.L.P.
        15 South Franklin Street
        Wilkes-Barre, PA 18711

        Counsel for Appellant

        JOSEPH J. HESTON, ESQUIRE
        (ARGUED)
        Dougherty, Leventhal & Price, L.L.P.
        459 Wyoming Avenue
        Kingston, PA 18704

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Circuit Judge.

Lewis Wetzel brought suit to challenge his discharge as Solicitor for the defendant Northeast Pennsylvania Hospital and Education Association. The district court granted summary judgment for defendants on the ground that Wetzel was a high level public employee, who was sufficiently involved in policy making to make political affiliation a legitimate consideration for his continued employment. Wetzel's appeal presents the recurring question of the nature and extent of the exception to the general principle, announced in Elrod v. Burns, 427 U.S. 347 (1976), and its progeny, that a public employee who is discharged because of his political affiliation has been deprived of First Amendment rights. We will affirm.

I.

The Northeastern Pennsylvania Hospital and Education Authority was created by Ordinance of the Luzerne County Commissioners to provide tax exempt status to bonds

issued under the provisions of the Municipal Authorities Act of 1945, 53 Pa. Cons. Stat. SS 301-22 (West 1997), at the request of health care providers and educational institutions throughout northeastern Pennsylvania. Pursuant to its charter, Luzerne County's three Commissioners appoint the Authority's Board of Directors. The Board consists of five members, who serve staggered five-year terms that expire in consecutive years. Prior to December 31, 1993, the Authority's Board consisted of Dr. Charles Carpenter, Chair; Peter Mailloux, Vice Chair; George Ruckno, Jr., Assistant Secretary/Treasurer; Jeanette Dombroski, and Yvonne Bozinski. Carpenter, Mailloux, and Ruckno were Republicans, and Dombroski and Bozinski were Democrats.

On March 17, 1994, a newly-elected Democratic majority of Commissioners appointed Democrat Peter Butera to replace Ruckno, whose term of office had expired on December 31, 1993. On March 31, 1994, the Board held a reorganization meeting at which the Directors elected Democrat Bozinski to serve as the Board Chair, Democrat Butera as Vice-Chair, and Democrat Dombroski as Treasurer. The Directors also voted to remove appellant Wetzel, a Republican, from his position as Authority Solicitor and replace him with attorney John P. Moses, a Democrat. Wetzel was, and had been, an at-will employee of the Authority who had served as its Solicitor for the previous ten years.

Wetzel thereupon initiated a civil action under 42 U.S.C. S 1983 seeking both compensatory and punitive damages arising from his discharge as Solicitor. He sued Rose Tucker and Frank Crossin, the two Democratic Luzerne County Commissioners who were serving at the time of his discharge; Bozinski, Butera, and Dombroski, the three Democratic Authority Directors who were serving at the time; and the Authority itself. Wetzel alleged that, because his discharge was based solely on his affiliation with the Republican Party, the defendants violated his First and Fourteenth Amendment rights to political association and due process.

After the close of discovery, defendants moved for summary judgment, contending that, as an at-will

3

employee, Wetzel possessed no property interest in his employment subject to protection under the Fourteenth Amendment. In the alternative, they argued that political party affiliation is an appropriate requirement for the effective performance of the duties of Authority Solicitor. Wetzel cross-moved for partial summary judgment on the issue of liability, asserting that the record established that he was terminated for political reasons in contravention of his First Amendment rights of association. The district court granted defendants' Motion for Summary Judgment and denied Wetzel's Cross-Motion for Partial Summary Judgment, concluding that Wetzel's discharge was permissible because political affiliation is an appropriate criterion for the effective performance of the duties of the Authority Solicitor.[1] This timely appeal followed. Our familiar standard of review is set forth in the margin.[2]

## II.

As in any case involving the accusation of a politically-motivated discharge of a public employee, we turn first to the Supreme Court's decisions in Elrod v. Burns, 427 U.S.

_____

[1]. The District Court properly rejected defendants' contention that Wetzel's at-will employment status had relevance to his First Amendment claim. See Wetzel v. Tucker, No. 3:94-CV-660, mem. op. at 6 n.3 (M.D. Pa. March 24, 1997). The Court concluded that, while Wetzel's lack of entitlement to his position as Solicitor might bar a substantive due process claim, it was not relevant to an action grounded in the free speech and association principles of the First Amendment. Id. (citing Rutan v. Republican Party of Illinois, 497 U.S. 62, 72 (1990)).

[2]. We review a summary judgment de novo. See Sempier v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir. 1995). Summary judgment is appropriate only when the admissible evidence fails to demonstrate a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). When, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden. The nonmoving party creates a genuine issue of material fact if he provides sufficient evidence to allow a reasonable jury to find for him at trial. We give the nonmoving party the benefit of all reasonable inferences. Bray v. Marriott Hotels, 110 F.3d 986, 989 (3d Cir. 1997).

347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). In Elrod, the Court held that discharging certain public employees solely on the basis of their political affiliation infringes upon their First Amendment rights to belief and free association. See Elrod, 427 U.S. at 355–57. The Court, however, specifically exempted from this general prohibition the politically-motivated discharge of persons who hold confidential or policy making positions. Id. at 367–68. In articulating this exception, the Court noted that there is "[n]o clear line . . . between policy making and nonpolicymaking positions," but offered instruction by suggesting that "consideration should . . . be given to whether the employee acts as an advisor or formulates plans for the implementation of broad policy goals." Id. at 368.

In Branti, the Court addressed the difficulty in the wake of Elrod of determining whether, in a given situation, political affiliation is a legitimate factor for a public hiring authority to consider. Branti, 445 U.S. at 518. Refining its prior analysis, the Court observed that "the ultimate inquiry is not whether the label of `policymaker' or `confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. See also Ness v. Marshall, 660 F.2d 517, 521 (3d Cir. 1981) (noting that Branti calls for a "functional analysis" and concluding that "should a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment").

The character of this inquiry is inherently fact-specific in that it requires a court to examine the nature of the responsibilities of the particular job at issue. See Zold v. Township of Mantua, 935 F.2d 633, 635 (3d Cir. 1991). Importantly, this inquiry is focused on "the function of the public office in question and not the actual past duties of the particular employee involved." Brown v. Trench, 787 F.2d 167, 168 (3d Cir. 1986); see also Waskovich v. Morgano, 2 F.3d 1292, 1297 (3d Cir. 1993); Burns v. County of Cambria, Pa., 971 F.2d 1015, 1022 (3d Cir. 1993); cf.

5

Furlong v. Gudknecht, 808 F.2d 233, 236 (3d Cir. 1986). Other circuits have used a similar analysis, as we document in the margin.3 We have held, however, that evidence of past job duties may in some cases be informative. See Peters v. Delaware River Port Auth., 16 F.3d 1346, 1353 (3d Cir. 1994); Waskovich, 2 F.3d at 1300.

III.

Wetzel contends that political affiliation is not an appropriate criterion for the position of Authority Solicitor. He characterizes the Authority simply as a "conduit" through which tax-exempt bonds are funneled to health care and educational institutions. Citing the facts that the Authority's sole purpose is to serve as a financing mechanism to issue these bonds, that it meets infrequently (only when an institution requests a bond issue), and that it has never turned down a bond request, Wetzel submits that the Authority is a reactive, non-policy making body.

In contrast, the defendants maintain that the Authority is a policy making body whose Solicitor may be terminated appropriately based on his political affiliation. In their submission, the Authority's enabling legislation, as well as the record testimony, compel the conclusion that the

_____

3. See Williams v. City of River Rouge, 909 F.2d 151, 154 (6th Cir. 1990) ("When examining a public office for first amendment protection against politically-motivated dismissal, the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office."); Tomczak v. City of Chicago, 765 F.2d 633, 641 (7th Cir. 1985) ("[I]f an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance."). One Court of Appeals adopting this approach has gone so far as to hold that it may preclude altogether consideration of actual past job duties. See O'Connor v. Steeves, 994 F.2d 905, 911 (1st Cir. 1993) ("[T]he actual past duties of the discharged employee are irrelevant if the position inherently encompasses more expansive powers and more important functions that would tend to make political affiliation an appropriate requirement for effective performance") (internal quotations omitted).

6

Authority's Solicitor acts as an advisor with regard to policy matters, thereby placing political affiliation legitimately among the criteria for the position.

Based on these competing contentions regarding both the general role of the Authority and the particular responsibilities of its Solicitor, our inquiry is by necessity two-fold. We must first address whether the Authority is a policy making body, because if it is not, it would be impossible for the Authority to demonstrate that the party affiliation of the Solicitor is an appropriate requirement for his effective performance. Answering this in the affirmative, we then turn to the central issue of our inquiry: whether the Authority has shown that there is no genuine issue of material fact as to whether political party affiliation is an appropriate criterion for the effective job performance of the Authority's Solicitor. Because we believe that the Authority has met this burden as a matter of law, we conclude that the position of Solicitor is one that falls within the exception laid out in Elrod and its progeny.

A.

To determine whether the Authority is a policy-making body, we turn first to the Municipal Authorities Act of 1945, 53 Pa. Cons. Stat. SS 301-322, which established the Authority. Contrary to plaintiff's claim that the Authority is a mere "conduit" through which bond fundsflow, the Act confers upon the Authority a broad range of powers, many of which implicate substantial policy matters. For example, S 306B(n) confers upon the Authority the power"[t]o do all acts and things necessary or convenient for the promotion of its business and the general welfare of the Authority, to carry out the powers granted to it by this act or any other acts." (emphasis supplied) This is an expansive grant. The section not only charges the Authority with ensuring its continued operation, but it also grants the Authority the discretionary power to decide how to conduct its operations. If the Pennsylvania legislature meant for the Authority to serve simply as a conduit through which tax exempt financing is obtained by health care providers and educational institutions, it would not have included

7

language that allowed for such clear policy making discretion.

The district court analyzed the matter as follows:

> The Authority's decisions regarding the issuance of bonds for such projects as long-term nursing care centers and personal care facilities necessarily involve public policy implications. Many times, the feasibility and continued existence of such facilities are directly dependent on the Authority's approval of tax-exempt bonding. Public policy considerations, such as the present need for these types of facilities in certain geographic areas, are almost certain to factor into the decisions regarding the issuance of bonds to these entities.

Wetzel v. Tucker, mem. op. at 12. We agree. Noting that these are but a few of the potential circumstances under which the Authority may assert its policy making power, we reject Wetzel's claim that the Authority is a reactive, non-policy making body.

B.

Turning to the question whether Authority Solicitor is a position for which political affiliation is an appropriate criterion, we must assess the level of input that the office of Solicitor has on matters of public policy. We have twice addressed this issue in cases involving the discharge of government lawyers. In Ness v. Marshall, supra, we affirmed the grant of summary judgment in favor of a city whose incoming mayor, upon taking office, had discharged the previous administration's city solicitor and assistant city solicitor. In rejecting the claim that political affiliation was not an appropriate criterion for those positions, we noted that the attorneys in question performed various functions that were "intimately related to city policy." Id. at 522. Specifically, we noted that both the city solicitor and the assistant solicitor rendered legal advice to the administration, drafted ordinances, and negotiated contracts for the city. See id. As such, we concluded that, in filling these positions, "the mayor ha[d] the right to receive the complete cooperation and loyalty of a trusted

8

advisor, and should not [have been] expected to settle for less." Id.

Our conclusion was the same for the position of assistant district attorney. In Mummau v. Ranck, 687 F.2d 9 (3d Cir. 1982), we affirmed the grant of summary judgment in favor of a county district attorney, determining that, as a matter of law, political affiliation is an appropriate criterion for the position of assistant district attorney. The district court had observed that the position entailed decisionmaking as to the allocation of the county's scarce resources and the prosecution of particular individuals and classes of crime. See Mummau v. Ranck, 531 F. Supp. 402, 405 (E.D. Pa. 1982). We agreed, rejecting the contention that an attorney with this type of input into governmental policy making operates in a purely technical or ministerial manner. See Mummau, 687 F.2d at 10.

Notably, in both Ness and Mummau, we focused on the authorized functions and duties of the office in question rather then on the responsibilities of the particular attorneys at issue. See Ness, 660 F.2d at 521 ("That a city solicitor in a similar position could conceivably operate in such a legal/technical manner is a possibility that need not concern us here."); Mummau, 687 F.2d at 10 ("That an assistant district attorney `could conceivably operate in such a legal/technical manner,' or that appellant in fact so limited himself to the role described is irrelevant.") (quoting Ness).

We see no material difference between the roles played by the attorneys in Ness and Mummau, and that played by Wetzel. This is especially so in light of the broad discretionary power conferred by S 306B(n) and the role that the advice of counsel would have in shaping policy decisions. Assume, for example, that the Board was pondering whether to pursue an affirmative action policy that would seek a minority underwriter for one of its bonds, but realized that the policy would probably be challenged. Or assume that a Board considering a bond funding application from a private drug rehabilitation clinic that proposed to build a huge facility within the borders of Luzerne County reasonably feared that the local community might oppose the project on legal (or other) grounds. The

9

advice of counsel as to the legality of these actions, and whether or not it was worthwhile to defend them in litigation should that become necessary, would inform these policy decisions in a very direct way.

Wetzel responds that the Board of Commissioners could rely on the Solicitor's objective legal advice in these situations, uninfluenced by his personal beliefs. That response, however, is simplistic. Tough legal questions are not answered mechanically, but rather by the exercise of seasoned judgment. Judgment is informed by experience and perspective, and any evaluation of the risks involved in such a decision (including the determination as to whether it is advisable to pursue litigation) is informed, in turn, by values. Moreover, as the foregoing discussion suggests, these issues are not purely legal; clients employ counsel to assess whether the goals are indeed worth the risks. [4] As such, to be confident in its Solicitor's advice on matters "intimately related" to Authority policy, the Board must have the right to demand that his loyalties lie with it and its agenda. Ness, 660 F.2d at 522. Given the political ramifications of any attendant legal advice, confidence sometimes may come only with the assurance that the Solicitor shares the same political ideology as the Board. These situations are exactly the types for which the Supreme Court created the Elrod/Branti exception.[5]

_____

4. Cf. Pennsylvania Rules of Professional Conduct Rule 2.1 cmt. (Supp. 1997) (a lawyer should advise a client on the social and political ramifications of a particular action).

5. Wetzel also argues that Commissioner Frank Crossin's testimony that, in his opinion, political affiliation was not a criterion for the position of
Solicitor precludes summary judgment. We disagree. Where, as here, the objective evidence leads us to conclude that, as a matter of law, a person occupied a policy-making position, the lay opinion of someone in Crossin's position is rendered irrelevant. Indeed, we believe that were such opinions sufficient to preclude summary judgment, it would raise the specter, admittedly not present here, of permitting a plaintiff to avoid
summary judgment simply by finding a Commissioner, who may have any number of motives, to characterize the job one way or another, perhaps in view of changed political alliances.

10

C.

It is clear from this record that the Authority's Solicitor "has meaningful input into decision making concerning a major [government] program." Brown, 787 F.2d at 169-70. As the analysis in Part III.B makes clear, the District Court was correct when it observed that "Wetzel's argument that the role of Authority Solicitor is limited to rendering technical legal advice, far removed from political concerns, plainly ignores the extent to which the Authority's attorney may be involved in matters of substantial importance to the community." Wetzel v. Tucker, mem. op. at 14. We conclude that there is no genuine issue of material fact as to whether political party affiliation is an appropriate criterion for the effective job performance of the Authority's Solicitor. Rather, as a matter of law, political affiliation is an appropriate criterion for the position. The judgment of the District Court will therefore be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11