Patrick S. COLLINS, Plaintiff–Appellant,

v.

George V. VOINOVICH, Individually and in his official capacity, et al., Defendants–Appellees.

No. 97–3154.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1998.

Decided July 14, 1998.

Kevin L. Shoemaker (argued and briefed), Christensen, Shoemaker & Winkler, Columbus, OH, for Plaintiff–Appellant.

Jack W. Decker, Office of the Attorney General of Ohio, John W. Zeiger, Marion H. Little, Jr. (argued and briefed), Stuart G. Parsell, Zeiger & Carpenter, Columbus, OH, for Defendant–Appellee.

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Before: RYAN and SILER, Circuit Judges, HOOD, District Judge.*

## OPINION

RYAN, Circuit Judge.

The plaintiff, Patrick S. Collins, appeals from the district court's grant of summary judgment in favor of the defendants on Collins's 42 U.S.C. § 1983 political-firing claim.

### I.

The plaintiff, a registered Democrat, alleges that in 1991 defendant Virgil Brown, the newly appointed executive director of the Ohio Lottery Commission (OLC), discharged Collins from his position as OLC assistant legal counsel, a position authorized by Ohio statute as "unclassified" in the civil service. Brown replaced Collins with a Republican. Collins claims that he performed his job well, and did not assist the OLC director or Ohio Governor George Voinovich, the newly elected Republican governor and a dismissed defendant in this case, in formulating policies. Instead, Collins maintains that he performed politically neutral legal tasks, had no discretionary authority, did not handle matters of partisan political interest, owed no special duty of loyalty to Brown, and was not in a fiduciary relationship with Brown. Furthermore, although the record reveals that Voinovich's well-publicized anti-gaming sentiment was incorporated into his policy on how the lottery would be administered, Collins asserts that the OLC is an apolitical body concerned only with funding public education in Ohio.

Brown, as the governor's appointed executive director of the OLC, a cabinet-level position, administered the OLC, presumably in accordance with Voinovich's restrictive gambling policy. Brown's duties included broad discretion in appointing deputy directors and assistants, licensing lottery sales agents, accounting for financial operations, entering into promotional contracts, fashioning regulations governing the operation and adminis-

tration of the lottery, and implementing the governing statute.

As for Collins, his duties were defined in part by the OLC's "Legal Department Mission Statement." These duties included: (1) to provide counsel to the OLC, including the director; (2) to interpret statutory provisions; (3) to draft rules; (4) to negotiate and draft vendor contracts and other legal documents; (5) to assist the playing public and the sales agents; (6) to determine if the OLC should take proactive or reactive stances on particular issues; (7) to serve as cocounsel with attorneys from the Attorney General's Office in litigation pertaining to the OLC; and (8) to "work[ ] closely with the Governor's Office in an effort to support the goals and objectives of the Administration." Additionally, a "position description" prepared by the Ohio Department of Administrative Services specified that the OLC legal department attorneys serve as the director's administrative assistants, conducting such projects as assigned by him; "hold[ ] informative meetings with the public and government officials while acting for the [d]irector"; "develop[ ] and implement[ ] policies and procedures relating to legal functions at the direction of the [d]irector"; and "serve[ ] as liaison with other public agencies." Collins's own rsum and job description are consistent with the above duties. The rsum and job description indicate that Collins conducted public hearings on rules, labor grievance hearings pursuant to state collective bargaining contracts, and licensing hearings; attended City Council meetings; and helped recover child support arrearages from lottery prizewinners.

In response to Collins's complaint, the defendants moved for summary judgment, asserting that political affiliation is an appropriate consideration for the OLC's legal-counsel position. In granting summary judgment, the district court, after de novo review, adopted the magistrate judge's report and recommendation, which held that political affiliation is indeed an appropriate consideration for the OLC legal-counsel position. We agree and affirm.

**II.**

We review a district court's grant of summary judgment de novo, using the same test as the district court used. Crabbs v. Copperweld Tubing Prods. Co., 114 F.3d 85, 88 (6th Cir.1997). Generally, politically motivated dismissals violate the First Amendment unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). "Political affiliation" is broader than "party membership" in that it includes "commonality of political purpose and support." Williams v. City of River Rouge, 909 F.2d 151, 153 n. 4 (6th Cir. 1990). Courts should make the determination of "appropriate[ness]" on a case-by-case basis. See id. at 153.

In determining whether political affiliation is an appropriate requirement, "the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." Id. at 154; see Rice v. Ohio Dep't of Transp., 14 F.3d 1133, 1142–43 (6th Cir.1994). Naturally, the nature of the position as described by statute, or as determined by the incoming administration, carries some weight in the determination. See Rice, 14 F.3d at 1142–43; Faughender v. City of N. Olmsted, 927 F.2d 909, 913–14 (6th Cir.1991). The limits of what is appropriate under Branti is a question for the court. Rice, 14 F.3d at 1142.

In order to assist courts in applying the standard, the McCloud court undertook to analyze and place into four categories all of the jobs found by the Sixth Circuit or the Supreme Court to fall within the Branti exception. Category one embraces "positions specifically named in relevant … state … law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted." McCloud v. Testa, 97 F.3d 1536, 1557 (6th Cir.1996). Here, Collins contends that the executive-director position held by Brown would not qualify as a category-one position because the OLC allegedly is an apolitical organization. Yet, we clarified

in *McCloud* that the "political concern" proviso was included to distinguish policymakers, such as "football coach[es,]" for whom political affiliation is not an appropriate requirement. *Id.* at n. 30. Clearly, the OLC executive directorship, a cabinet-level appointment charged with administering the OLC in accordance with the governor's mandate, is a political position within the meaning of *Branti*. Indeed, this court has found political affiliation to be an appropriate consideration for even lesser positions in the OLC. *See Knowlton v. Brown*, No. 95–4274, 107 F.3d 870, 1997 WL 3615 (6th Cir. Jan. 3, 1997) (unpublished disposition). In addition, the inherently political nature of the OLC is reflected in the governing statute's requirement that the nine commissioner positions on the OLC must be balanced such that no party has more than a bare majority on the board. Such a balancing qualifies these positions as category-four political positions. *See McCloud*, 97 F.3d at 1557–58. Moreover, even if this court were to accept Collins's assertion that the OLC's duty to fund public education is devoid of partisanship, an assertion contradicted by the record, there is still room for principled disagreements about how the OLC should be run. Thus, the district court did not err in finding that the executive-director position is a category-one position.

█ Because the OLC legal counsel advises the OLC executive director, political affiliation is an appropriate consideration for the legal-counsel position as well. Indeed, category three includes "confidential advisors who spend a significant portion of their time on the job advising category one ... position-holders on how to exercise their statutory ... policymaking authority." *Id.* at 1557. This category specifically contemplates positions that communicate departmental views to the press or the legislature, as the OLC's legal-counsel position necessarily does, and specifically includes even a position charged with merely giving technical legal advice. *Id.* Clearly, the OLC legal-counsel position is a category-three position for which political affiliation is an appropriate consideration.

█ It is worth noting that the *Branti* exception "is to be construed broadly, so as

presumptively to encompass positions placed by the legislature outside of the 'merit' civil service." *McCloud*, 97 F.3d at 1542. Therefore, even "if there is any ambiguity about whether a particular position falls into any of [the categories] (and so also within the *Branti* exception), it is to be construed in favor of the governmental defendants when the position at issue is unclassified or non-merit under state law." *Id.* at 1557. Although there is no ambiguity in this case that would require us to resort to the presumption, the "unclassified" status of the OLC legal-counsel position provides additional support for the conclusion that political affiliation is an appropriate consideration for the OLC legal-counsel position.

A straight *Branti* analysis yields the same conclusion. Courts performing the *Branti* analysis have concluded that city or county attorneys are almost never positions for which First Amendment protection applies. *See Williams*, 909 F.2d at 155. This is so even if the attorney in the position merely performed the politically neutral and essentially technical job of providing legal advice upon request. *Id.* at 156. This court similarly found that the job of assistant prosecutor was a policy-making position that fell within the *Branti* exception. *See Monks v. Marlinga*, 923 F.2d 423, 425–26 (6th Cir. 1991). The inherent duties of the OLC legal-counsel position are comparable to those of the legal positions analyzed in *Williams* and *Monks*.

Collins's argument that the legal-counsel position is not a position of "confidence" is unpersuasive and misapprehends both the "attorney-client privilege," and the role of the office of the Ohio Attorney General. A person need not even be an attorney to occupy a position as a "confidential" advisor; therefore, the existence, or not, of the attorney-client privilege has little bearing on whether the position is one of confidence. For example, the political test has been deemed appropriate even for a nonlegal position, which, as is the case with the OLC's legal-counsel position, requires its holder to deal with the press and to communicate with the legislature. *See Rice*, 14 F.3d at 1140 (citing *Branti*, 445 U.S. at 518, 100 S.Ct.

1287). Moreover, the fact that the Ohio Attorney General and the Governor may be from different political parties underscores, rather than undermines, the need to have confidential legal advisors on staff in the various departments of the administration. Collins's remaining arguments are equally without merit and are inconsistent with the well-established jurisprudence that political affiliation is an appropriate consideration for government legal positions such as the OLC legal-counsel position. Therefore, contrary to Collins's assertions, his termination did not infringe his rights under the First Amendment.

## III.

Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of the defendants.